## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

RAVIPAL LUTHRA,

        Plaintiff,                       CASE NO.:

v.                                      JURY TRIAL DEMANDED

UNIVERSITY OF MIAMI,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RAVIPAL LUTHRA (hereinafter referred to as "Plaintiff" or "Mr. Luthra"), by and through his undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, UNIVERSITY OF MIAMI (hereinafter referred to as "Defendant" and/or "UM"), and alleges as follows:

## INTRODUCTION

1.      This case involves a Sikh Indian male who was discriminated against, retaliated against, and unlawfully terminated by his employer on the basis of his race and national origin, for complaining about unlawful activity, and for exercising his FMLA rights.

2.      Plaintiff seeks monetary relief to redress Defendant's unlawful employment practices in violation of 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"), the Florida Civil Rights Act of 1992, § 760.01 *et seq.*, Florida Statutes ("FCRA"), and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A, *et seq.* ("MDHRO"), and Defendant's deprivation of Plaintiff's civil right to pursue equal employment opportunities.

1

## PARTIES

3.      Mr. Luthra is an individual male currently residing in Hudson County, New Jersey.

4.      UNIVERSITY OF MIAMI ("Defendant UM" and/or "Defendant") is a Florida not-for-profit Corporation, with its principal place of business located at 5187 Ponce De Leon Blvd. Coral Gables, FL 33146.

5.      At all times material, Defendant employed Plaintiff at 1550 NW 10th Avenue, Room #340J, Miami, FL 33136 (hereinafter referred to as the "Miami location").

6.      The exact number of employees of Defendant is unknown, but upon information and belief, there are well more than the statutory minimum under Section 1981, Title VII, FMLA, FCRA and the MDHRO.

7.      At all times material, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 2611(4)(a), § 760.02(7), Florida Statutes and § 11A-25 of the MDHRO.

8.      At all times material Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f)

9.      At all times material, Plaintiff was an "eligible employee" of Defendant within the meaning of 29 U.S.C. § 2611(2).

10.     At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000e, and 29 U.S.C. § 2612.

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

13.     Mr. Luthra has complied with all administrative requirements.

14.     On or about May 15, 2024, Mr. Luthra timely filed a Charge of Discrimination (Charge No. 510-2024-07394) against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

15.     On or around January 21, 2025, the MDCHR issued Plaintiff's Notice of Right to Sue against Defendant.

16.     On or around February 12, 2025, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

17.     Mr. Luthra is timely filing this action within ninety (90) days of receipt of each Notice of Right to Sue.

18.     Mr. Luthra is timely commencing this action more than 180 days following the filing of his charge of discrimination.

## FACTUAL ALLEGATIONS

19.     At all times material, Nathalie Padron ("Padron") was a non-Indian individual female who was employed by Defendant as a Senior Manager. At all times material, Padron held

supervisory authority over Mr. Luthra, including the power to hire, fire, demote, and promote Mr. Luthra.

20.     At all times material, Monuel Aulov ("Aulov") was a non-Indian individual male who was employed by Defendant as a Director. At all times material, Aulov held supervisory authority over Mr. Luthra, including the power to hire, fire, demote, and promote Mr. Luthra.

21.     At all times material, Porsche Elisa Belidor ("Belidor") was a non-Indian individual female who was employed by Defendant as a Human Resources Manager.

22.     At all times material, Fernando Lopez ("Lopez") was a non-Indian individual male who was employed by Defendant as a Human Resources Manager.

23.     At all times material, Savoy Smith III ("Smith") was a non-Indian individual male who was employed by Defendant as a Human Resources Manager.

24.     At all times material, Mr. Luthra is a Sikh Indian male and was therefore a protected class member.

25.     As a Sikh Indian, Mr. Luthra wears a turban, which carries deep significance to him as it represents his identity and religion.

26.     In or around April of 2021, Mr. Luthra was hired by Defendant as a Clinical Research Coordinator ("CRC") level three (3).

27.     In or around August of 2021, however, Defendant demoted Mr. Luthra to a CRC level one (1). This demotion came with a nearly $18,000.00 decrease in pay, yet Mr. Luthra's hours remained unchanged.

28.     Mr. Luthra was surprised by the demotion because Defendant never complained to him about his performance or issued him any write-ups, yet Defendant demoted him and decreased

his wage by nearly twenty-five (25) percent. However, Mr. Luthra agreed to receive additional training following this demotion.

29.     In or around March 21, 2022, Todd Gelband ("Gelband"), a non-Indian individual who was employed by Defendant as a Clinical Research Data Specialist, subjected Mr. Luthra to a barrage of the most despicable, discriminatory remarks that he has ever endured.

30.     Gelband mocked Mr. Luthra's turban and asked, "can you also tie that thing around your penis?" Mr. Luthra was disgusted by Gelband's statements and immediately explained that Gelband's remarks about his turban were unacceptable and completely inappropriate.

31.     Nevertheless, Gelband continued to make deeply insulting and crude remarks regarding Mr. Luthra's turban despite all attempts to stop Gelband from making these discriminatory statements.

32.     Mr. Luthra was humiliated, disgusted, and emotionally distraught as a result of Defendant's actions.

33.     In or around March 25, 2022, Mr. Luthra reported Gelband's conduct to his managers, explaining, "[M]y turban carries a deep religious significance, and it was incredibly hurtful to have comments such as those thrown at me, not to mention humiliation as they were in earshot of others. I feel as though I have been targeted since discriminatory conduct, unreasonable and biased comments were made to me."

34.     To be clear, Mr. Luthra explicitly reported Gelband's "racist, vile remarks…" including "one instance where he commented on [Mr. Luthra's] turban making vulgar, disgraceful statements."

35.     Defendant took no effective action following this complaint, so Mr. Luthra made an effort to avoid Gelband for the remainder of his employment.

36.     In or around July of 2023, Defendant acknowledged Mr. Luthra's exceptional performance and promoted him to a CRC level two (2). The promotion to CRC level two (2) came with nearly a $6,000.00 increase but was still around $9,000.00 less than the CRC level three (3) position.

37.     Mr. Luthra was the only Indian individual in his office and was treated differently by his colleagues. Defendant, by and through their employees, managers, and agents, treated Mr. Luthra less favorably because he was Indian.

38.     During Mr. Luthra's employment, he was subjected to relentless harassment on the basis of his race and national origin by Sara Haddadi ("Haddadi"), an individual female who was employed by Defendant as a Clinical Research Coordinator. Defendant required Haddadi to train Mr. Luthra and assign him tasks, effectively serving as Mr. Luthra's supervisor.

39.     Haddadi regularly ignored Mr. Luthra during the day, but when she did not ignore Mr. Luthra, she assigned him additional tasks that required extensive amounts of overtime hours to complete, failed to track his performed overtime hours, and screamed at him when he asked for help.

40.     On or around August 30, 2023, Mr. Luthra emailed Padron regarding Haddadi's treatment towards him. Mr. Luthra reported that Haddadi's behavior towards him was "manipulative," "aggressive," "inappropriate," and "dominating." Mr. Luthra explained that he "tried to manage the situation on [his] own, but [Haddadi's behavior] has persisted and is now affecting both [his] emotional well-being and [his] physical health… which really triggers [my abdominal pain] bad with repeated episodes."

41.     Yet, Defendant failed to take meaningful action, and Mr. Luthra endured Haddadi's unlawful behavior for months.

42.     In or around October 28, 2023, Mr. Luthra again emailed Padron, stating, "if I [try] to say something then [Haddadi] totally denie[s] it and [puts] me down at every stage which is stressful for me…I am eager to work towards a resolution that will make me less stressful for all involved."

43.     Mr. Luthra continued to explain that "working [] with her actively affect[s] my abdomen and give[s] me anxiety." Mr. Luthra not only complained about Haddadi's discriminatory and harassing conduct, but he further explains that his disability, including abdominal pain and anxiety, flares up as a result of Haddadi's conduct.

44.     Again, Defendant failed to take meaningful action.

45.     Shortly thereafter, Haddadi screamed at Mr. Luthra relentlessly to the point Mr. Luthra had a panic attack at work. Mr. Luthra sought medical treatment and was officially diagnosed with anxiety as a result of Haddadi's continued discriminatory and harassing conduct.

46.     At this point, Mr. Luthra's doctor recommended he take FMLA leave.

47.     In or around December 15, 2023, Mr. Luthra applied for FMLA leave. On the very same day, Defendant disciplined Mr. Luthra for the first time by arbitrarily extending Mr. Luthra's probationary period of employment. Defendant's actions directly resulted in less protection for Mr. Luthra's employment and limited Mr. Luthra's benefits as an employee for Defendant.

48.     In or around December 29, 2023, Defendant approved Mr. Luthra's FMLA intermittent leave from January 1, 2024, to July 1, 2024.

49.     In or around January 1, 2024, Mr. Luthra's health deteriorated to the point he was rushed to the emergency room and hospitalized. Mr. Luthra updated Padron of his health conditions, and he voluntarily supplied her with doctor's notes and status updates.

50.     In or around January 4, 2024, Belidor asked Mr. Luthra to return back to work as scheduled despite his recent health emergency or FMLA status.

51.     Mr. Luthra continued to work and take intermittent leave for several months and was not issued with any write-ups or placed on a performance improvement plan while he was on intermittent medical leave.

52.     Unfortunately, Haddadi's discriminatory and harassing conduct persisted as she targeted Mr. Luthra because of his race and national origin.

53.     In or around February of 2024, Mr. Luthra again went to the emergency room because he experienced severe and debilitating chest pains. The following day, Mr. Luthra informed his manager of his daily activities that needed to be assisted while he was recovering from his emergency room visit.

54.     Throughout this time, on or around each of October 12, 2023, February 10, 2024, February 14, 2024, February 20, 2024, and March 7, 2024, Mr. Luthra asked Padron and Aulov for assistance in extending his visa to remain in the United States. Neither Padron nor Aulov provided any meaningful assistance despite Mr. Luthra's desperate attempts to resolve this issue. In fact, Padron and Aulov ignored Mr. Luthra for months and never provided assistance with securing his renewed visa.

55.     Padron and Aulov's evasiveness in aiding Mr. Luthra with his visa coincided with his complaints of discrimination and request for FMLA leave.

56.     During this time, Mr. Luthra applied for an accommodation, and was ultimately denied the accommodation on or around March 11, 2024.

57.     In or around March 11, 2024, following Mr. Luthra's attempt to renew his worker's visa and while he was on approved FMLA leave, Padron informed Mr. Luthra that he was being terminated, effective immediately.

58.     Mr. Luthra was shocked that Defendant terminated him because he had not received a work evaluation for months, was never written up, disciplined, or informed that his work-performance did not meet the standard expected of him.

59.     Mr. Luthra was devastated by Defendant's discriminatory and retaliatory decision to terminate his employment, but he attempted to reverse Defendant's decision so he could continue to provide for himself and maintain his visa.

60.     Mr. Luthra contacted Belidor, stating, "I was taken aback by the unexpected termination notice, as I was not given any prior indication of performance issues or concerns..."

61.     Mr. Luthra further contacted Lopez, stating, "[o]ver the past few months, I have observed several instances of bias within our workplace. These biases have manifested in various forms, including unequal treatment, favoritism, and exclusionary practices… [and include] the recent decision to terminate my employment."

62.     The events described above are just a few examples of unlawful discrimination and retaliation that Defendant UM subjected Mr. Luthra to on a continuous and ongoing basis throughout his employment.

63.     Defendant unlawfully discriminated against Mr. Luthra because of his race and national origin, and for taking FMLA leave.

64.     Defendant unlawfully retaliated against Mr. Luthra because he opposed Defendant's unlawful employment practices, and for exercising his FMLA rights.

65.     Defendant UM retaliated against Mr. Luthra for opposing Defendant's unlawful and discriminatory conduct.

66.     Defendant UM wrongfully terminated Mr. Luthra after he obtained intermittent FMLA leave to which he was entitled.

67.     Defendant UM retaliated against Mr. Luthra for requesting and taking FMLA leave to which he was entitled.

68.     Thus, Defendant UM violated Section 1981, Title VII, the FMLA, the FCRA and the MDHRO by subjecting Mr. Luthra to disparate treatment, hostile work environment, retaliation, and wrongful termination.

69.     Defendant's discrimination, retaliation, and unlawful termination against Mr. Luthra is in violation of Section 1981, Title VII, the FMLA, the FCRA and the MDHRO.

70.     Mr. Luthra claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

71.     At all relevant times, Defendant's employees were acting as agents of Defendant in their discriminatory, retaliatory, and unlawful treatment of Mr. Luthra.

72.     At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

73.     As a result of Defendant's actions, Mr. Luthra felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

74.     As a result of the acts and conduct complained herein, Mr. Luthra has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Mr. Luthra has also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Mr. Luthra has further experienced severe emotional and physical distress.

75.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

76.     Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained of herein.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1981
### RACE AND NATIONAL ORIGIN DISCRIMINATION

77.     Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

78.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

79.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

80.     Mr. Luthra is an Indian individual, and he is therefore a protected class member.

81.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

82.     Defendant subjected Mr. Luthra to discriminatory treatment on the basis of his race and national origin.

83.     Defendant's discriminatory treatment included 1) subjecting Mr. Luthra to discriminatory comments regarding his race and national origin, including but not limited to vulgar remarks about his turban, such as, "can you also tie that thing around your penis," 2) failing to train Mr. Luthra for his position, 3) assigning nearly double the number of tasks to Mr. Luthra compared to his non-Indian coworkers, 4) demoting Mr. Luthra from a CRC level three to a CRC level one, 5) denying Mr. Luthra the same employment privileges afforded to his non-Indian co-workers, 6) extending Mr. Luthra's probationary period of employment, 7) repeatedly screaming at Mr. Luthra in the workplace, 8) ignoring Mr. Luthra's complaints of discrimination, and 9) unlawfully terminating Mr. Luthra's employment, among others.

84.     Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Luthra was forced to endure.

85.     The discriminatory actions of Defendant against Mr. Luthra, as described and set forth above, constitute an adverse employment action for purposes of Section 1981. In subjecting Mr. Luthra to adverse employment actions, Defendant intentionally discriminated against Mr. Luthra with respect to the compensation, terms, conditions, or privileges of his employment.

86.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

87.     Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

88.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

89.     Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Section 1981.

90.     Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**COUNT II**</u>
**42 U.S.C. § 1981**
**HOSTILE WORK ENVIRONMENT**

91.     Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

92.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

93.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

94.     Mr. Luthra is an Indian individual, and he is therefore a protected class member.

95.     The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

96.     Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Luthra to the regular use of humiliating, racially disparaging remarks such as comments relating to his turban being tied around his penis, 2) screaming at Mr. Luthra in front of his coworkers, even to the point he suffered a panic attack, 3) ignoring Mr. Luthra for hours while disregarding his questions or pleas for help, 4) expecting Mr. Luthra to train himself in lieu of proper training, and 5) assigning Mr. Luthra nearly double the tasks assigned to his non-Indian coworkers.

97.     Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Luthra was forced to endure.

98.     Defendant's discriminatory conduct toward Mr. Luthra negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Luthra feel isolated, humiliated, embarrassed, and ashamed.

99.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

100.    Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

101.    Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

102.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

103.     Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Section 1981.

104.     Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT III**
**42 U.S.C. § 1981**
**RETALIATION**

105.     Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

106.     Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

107.     Section 1981 further provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

108.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

109.     Defendant retaliated against Mr. Luthra for reporting discrimination on the basis of his race and national origin in violation of Section 1981.

110.    Mr. Luthra engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

111.    Mr. Luthra was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

112.    Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

113.    Mr. Luthra engaged in protected activity by repeatedly reporting Gelband and Haddadi's unlawful discriminatory behavior and comments during his employment.

114.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Defendant's Human Resources team, Defendant disciplined Mr. Luthra and assigned Mr. Luthra additional tasks while continuing to racially disparage him.

115.    In or around October of 2023, Mr. Luthra again engaged in protected activity by reporting Haddadi's discriminatory behavior to Defendant's Human Resources. Mr. Luthra explained that Haddadi discriminated against and disciplined Mr. Luthra but did not take any similar action towards non-Indian coworkers. Following this report, Defendant extended Mr. Luthra's probationary period and ultimately terminated Mr. Luthra's employment.

116.    There is a causal connection between Mr. Luthra's reports of unlawful discrimination and Defendant terminating Mr. Luthra's employment.

117.    In response to Mr. Luthra opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Luthra.

118.    Defendant retaliated against Mr. Luthra by engaging in conduct, including but not limited to, 1) forcing Mr. Luthra to report to Haddadi after complaining about her, where she

16

continued to make racially disparaging remarks towards him 2) assigning Mr. Luthra additional tasks, 3) denying Mr. Luthra additional training, 4) extending Mr. Luthra's probationary period, and 5) unlawfully terminating Mr. Luthra.

119.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Luthra because of his protected activities.

120.    Any reasonable employee in Mr. Luthra's position would be dissuaded from reporting racism if he knew that he would be subjected to the kind of treatment that Mr. Luthra was forced to endure.

121.    Defendant's alleged bases for its adverse employment actions against Mr. Luthra are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

122.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Section 1981, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

123.    Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

124.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

125.    Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Section 1981.

126.     Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 2000e-2**
**RACE AND COLOR DISCRIMINATION**

127.     Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

128.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

129.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

130.     Mr. Luthra is an Indian individual, and he is therefore a protected class member.

131.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

132.     Defendant subjected Mr. Luthra to discriminatory treatment on the basis of his race and national origin.

133.     Defendant's discriminatory treatment included 1) subjecting Mr. Luthra to discriminatory comments regarding his race and national origin, including but not limited to vulgar remarks about his turban, such as "can you also tie that thing around your penis," 2) failing to train Mr. Luthra for his position, 3) assigning nearly double the number of tasks to Mr. Luthra compared to his non-Indian coworkers, 4) demoting Mr. Luthra from a CRC level three to a CRC level one,

5) denying Mr. Luthra the same employment privileges afforded to his non-Indian co-workers, 6) extending Mr. Luthra's probationary period of employment, 7) repeatedly screaming at Mr. Luthra in the workplace, 8) ignoring Mr. Luthra's complaints of discrimination, and 9) unlawfully terminating Mr. Luthra's employment, among others.

134.    Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Luthra was forced to endure.

135.    The discriminatory actions of Defendant against Mr. Luthra, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Mr. Luthra to adverse employment actions, Defendant intentionally discriminated against Mr. Luthra with respect to the compensation, terms, conditions, or privileges of his employment.

136.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

137.    Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

138.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

139.    Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Section 1981.

140. Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT V
### 42 U.S.C. § 2000e-2
### HOSTILE WORK ENVIRONMENT
### (Plaintiff as Against All Defendant)

141. Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

142. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

143. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

144. Mr. Luthra is an Indian individual, and he is therefore a protected class member.

145. The Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

146. Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Luthra to the use of humiliating, racially disparaging remarks each and every day such as comments relating to his turban, 2) screaming at Mr. Luthra in front of his coworkers, 3) ignoring Mr. Luthra for hours while disregarding his questions or pleas for help, 4) expecting Mr. Luthra to train himself in lieu of proper training, and 5) assigning Mr. Luthra nearly double the tasks assigned to his non-Indian coworkers.

147.    Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Luthra was forced to endure.

148.    Defendant's discriminatory conduct toward Mr. Luthra negatively impacted both his professional life and his personal life. Defendant's conduct made Mr. Luthra feel isolated, humiliated, embarrassed, and ashamed.

149.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

150.    Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

151.    Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

152.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

153.    Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Title VII.

154.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**42 U.S.C. § 2000e-3**
**RETALIATION**

155.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

156.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

157.     The elements of a prima facie case of retaliation are flexible and are tailored on a case-by-case basis to differing factual circumstances.

158.     Defendant retaliated against Mr. Luthra for reporting discrimination on the basis of his race and national origin in violation of Title VII.

159.     Mr. Luthra engaged in protected activity by making several complaints to Defendant and opposing Defendant's unlawful actions.

160.     Mr. Luthra was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place.

161.     Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in similar protected activity.

162.     Mr. Luthra engaged in protected activity by repeatedly reporting Gelband and Haddadi's unlawful discriminatory behavior and comments during his employment.

163.     After many unsuccessful reports and complaints of discrimination and unlawful activity to Defendant's Human Resources team, Defendant disciplined Mr. Luthra and assigned Mr. Luthra additional tasks while continuing to racially disparage him.

164.     In or around October of 2023, Mr. Luthra again engaged in protected activity by reporting Haddadi's discriminatory behavior to Defendant's Human Resources. Mr. Luthra explained that Haddadi discriminated against and disciplined Mr. Luthra but did not take any action against non-Indian coworkers. Following this report, Defendant extended Mr. Luthra's probationary period and terminated Mr. Luthra's employment.

165.   There is a causal connection between Mr. Luthra's reports of unlawful discrimination and Defendant terminating Mr. Luthra's employment.

166.   In response to Mr. Luthra opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Luthra.

167.   Defendant retaliated against Mr. Luthra by engaging in conduct, including but not limited to, 1) forcing Mr. Luthra to report to Haddadi after complaining about her, where she continued to make racially disparaging remarks towards him, 2) assigning Mr. Luthra additional tasks, 3) denying Mr. Luthra additional training, 4) extending Mr. Luthra's probationary period, and 5) unlawfully terminating Mr. Luthra.

168.   Defendant took the above-mentioned materially adverse actions, among others, against Mr. Luthra because of his protected activities.

169.   Any reasonable employee in Mr. Luthra's position would be dissuaded from reporting racism and discrimination if he knew that he would be subjected to the kind of treatment that Mr. Luthra was forced to endure.

170.   Defendant's alleged bases for its adverse employment actions against Mr. Luthra are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

171.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

172.    Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

173.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

174.    Defendant's conduct deprived Mr. Luthra of his statutory rights guaranteed under Title VII.

175.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law

**COUNT VII**
**29 U.S.C. § 2615**
**FMLA Interference**

176.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

177.    Employers are prohibited from interfering with, restraining, or denying the exercise or attempted exercise of any right protected by the FMLA. 29 U.S.C. § 2615.

178.    By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

179.    In or around December of 2023, Defendant was on notice of Plaintiff's approved FMLA leave.

180.    Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

181.    Defendant violated the FMLA by unlawfully interfering, restraining, and denying Plaintiff's use and/or attempted use of his leave benefits under the FMLA. Specifically, Defendant

terminated Plaintiff's employment while he was on approved FMLA leave, which spanned from January 1, 2024, through July 1, 2024.

182.　　As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

183.　　The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the FMLA.

184.　　Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT VIII
### 29 U.S.C. §2615
### FMLA Retaliation

185.　　Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

186.　　Employers are prohibited from retaliating against an employee in any manner for having exercised or attempted to exercise protected rights under the FMLA or using the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

187.　　Employers are prohibited from retaliating against an employee in any manner for opposing or complaining about any unlawful practice under the FMLA. 29 C.F.R. § 825.220(a)(2).

188.　　By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

189.    In or around December of 2023, Defendant was on notice of Plaintiff's approved FMLA leave.

190.    Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

191.    Plaintiff engaged in a protected activity when he exercised and/or attempted to exercise his right to leave benefits under the FMLA and when he opposed the Defendant's unlawful conduct in violation of the FMLA.

192.    Plaintiff acted in good faith and with the objective and subjective belief that he was entitled to leave benefits under the FMLA and that Defendant had committed violations of the FMLA.

193.    Defendant retaliated against Mr. Luthra by engaging in conduct, including but not limited to, requiring Mr. Luthra perform more work assignments than his non-disabled co-workers; subjecting Mr. Luthra to harsher scrutiny and discipline than his non-disabled co-workers; extending Mr. Luthra's probationary period of employment; requiring Mr. Luthra to work alongside his harassers; at times, ignoring Mr. Luthra in the workplace; demoting Mr. Luthra; and unlawfully terminating Mr. Luthra's employment, among others.

194.    Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of his protected activities.

195.    Defendant took the above-mentioned materially adverse actions shortly after Plaintiff exercised his rights of taking FMLA leave.

196.    Any reasonable employee in Plaintiff's position would be dissuaded from opposing unlawful conduct if they knew they would be subjected to the same kind of treatment that Plaintiff was subjected to.

197.     Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

198.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

199.     The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the FMLA.

200.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 760.10(1), Fla. Stat.**
**FCRA RACE AND NATIONAL ORIGIN DISCRIMINATION**

201.     Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

202.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and national origin. § 760.10(1)(a), Fla. Stat.

203.     Mr. Luthra is Indian and is therefore a protected class member.

204.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

205.    Defendant's discriminatory treatment included 1) subjecting Mr. Luthra to discriminatory comments regarding his race and national origin, including but not limited to vulgar remarks about his turban, such as "can you also tie that thing around your penis," 2) failing to train Mr. Luthra for his position, 3) assigning nearly double the number of tasks to Mr. Luthra compared to his non-Indian coworkers, 4) demoting Mr. Luthra from a CRC level three to a CRC level one, 5) denying Mr. Luthra the same employment privileges afforded to his non-Indian co-workers, 6) extending Mr. Luthra's probationary period of employment, 7) repeatedly screaming at Mr. Luthra in the workplace, 8) ignoring Mr. Luthra's complaints of discrimination, and 9) unlawfully terminating Mr. Luthra's employment, among others.

206.    Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected class endured the discriminatory conduct that Mr. Luthra was forced to endure.

207.    The discriminatory actions of Defendant against Mr. Luthra, as described and set forth above, constitute adverse employment actions for purposes of the FCRA.  In subjecting Mr. Luthra to adverse employment actions, Defendant intentionally discriminated against Mr. Luthra with respect to the compensation, terms, conditions, or privileges of his employment.

208.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

209.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

210.    The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the FCRA.

211.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**§ 760.10(1), Fla. Stat.**
**FCRA HOSTILE WORK ENVIRONMENT**

212.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

213.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race and national origin. § 760.10(1)(a), Fla. Stat.

214.    Mr. Luthra is Indian and is therefore a protected class member.

215.    Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

216.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Luthra to the use of humiliating, racially disparaging remarks each and every day such as comments related to tying his turban around his penis, 2) screaming at Mr. Luthra in front of his coworkers, even to the point where Mr. Luthra suffered panic attacks, 3) ignoring Mr. Luthra for hours while disregarding his questions or pleas for help, 4) expecting Mr. Luthra to train

himself in lieu of proper training, and 5) assigning Mr. Luthra nearly double the tasks assigned to his non-Indian coworkers.

217.    Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside his protected classes endured the discriminatory conduct that Mr. Luthra was forced to endure.

218.    Defendant's discriminatory conduct towards Mr. Luthra negatively and significantly impacted Mr. Luthra's life. Defendant's conduct made Mr. Luthra feel isolated, embarrassed, and ashamed.

219.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

220.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Luthra's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

221.    The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the FCRA.

222.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

## <u>COUNT XI</u>
### § 760.10(7), Fla. Stat.
### FCRA RETALIATION

223.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

224.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

225.    Mr. Luthra engaged in protected activity by repeatedly reporting Gelband and Haddadi's unlawful discriminatory behavior and comments during his employment.

226.    After many unsuccessful reports and complaints of discrimination and unlawful activity to Defendant's Human Resources team, Defendant began assigning Mr. Luthra additional tasks while continuing to racially disparage Mr. Luthra.

227.    In or around October of 2023, Mr. Luthra again engaged in protected activity by reporting Haddadi's discriminatory behavior to Defendant's Human Resources. Mr. Luthra explained that Haddadi discriminated against and disciplined Mr. Luthra but did not take any action against non-Indian coworkers. Following this report, Defendant extended Mr. Luthra's probationary period and terminated Mr. Luthra's employment.

228.    There is a causal connection between Mr. Luthra's reports of unlawful discrimination and Defendant terminating Mr. Luthra's employment.

229.    In response to Mr. Luthra opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Luthra.

230.    Defendant retaliated against Mr. Luthra by engaging in conduct, including but not limited to, 1) forcing Mr. Luthra to report to Haddadi after complaining about her, where she

continued to make racially disparaging remarks towards him, 2) assigning Mr. Luthra additional tasks, 3) denying Mr. Luthra additional training, 4) extending Mr. Luthra's probationary period, and 5) unlawfully terminating Mr. Luthra.

231.    Defendant took the above-mentioned materially adverse actions, among others, against Mr. Luthra because of his protected activities.

232.    Any reasonable employee in Mr. Luthra's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Luthra was forced to endure.

233.    Defendant's alleged bases for its adverse employment actions against Mr. Luthra are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

234.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

235.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Luthra's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

236.    The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the FCRA.

237.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XII**
**§ 11A-26(1), Code of Miami-Dade County**
**MDHRO RACE AND NATIONAL ORIGIN DISCRIMINATION**

238.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

239.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's race or national origin. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

240.    Mr. Luthra is Indian and is therefore a protected class member.

241.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

242.    Defendant's discriminatory treatment included 1) subjecting Mr. Luthra to discriminatory comments regarding his race and national origin, including but not limited to vulgar remarks about his turban, such as "can you also tie that thing around your penis," 2) failing to train Mr. Luthra for his position, 3) assigning nearly double the number of tasks to Mr. Luthra compared to his non-Indian coworkers, 4) demoting Mr. Luthra from a CRC level three to a CRC level one, 5) denying Mr. Luthra the same employment privileges afforded to his non-Indian co-workers, 6) extending Mr. Luthra's probationary period of employment, 7) repeatedly screaming at Mr. Luthra in the workplace, 8) ignoring Mr. Luthra's complaints of discrimination, and 9) unlawfully terminating Mr. Luthra's employment, among others.

243.    Defendant targeted Mr. Luthra because he is Indian. No similarly situated employee outside of his protected class endured the discriminatory conduct that Mr. Luthra was forced to endure.

244.    The discriminatory actions of Defendant against Mr. Luthra, as described and set forth above, constitute adverse employment actions for purposes of the MDHRO.  In subjecting Mr. Luthra to adverse employment actions, Defendant intentionally discriminated against Mr. Luthra with respect to the compensation, terms, conditions, or privileges of his employment.

245.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

246.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Mr. Luthra's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

247.    The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the MDHRO.

248.    Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XIII
### § 11A-26(1), Code of Miami-Dade County
### MDHRO HOSTILE WORK ENVIRONMENT

249.    Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

250.    The MDHRO prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's race or national origin. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

251.    Mr. Luthra is Indian and is therefore a protected class member.

252.    Defendant's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

253.    Defendant's severe and pervasive conduct included, but was not limited to 1) subjecting Mr. Luthra to the use of humiliating, racially disparaging remarks each and every day such as comments related to tying his turban around his penis, 2) screaming at Mr. Luthra in front of his coworkers, even to the point where Mr. Luthra suffered panic attacks, 3) ignoring Mr. Luthra for hours while disregarding his questions or pleas for help, 4) expecting Mr. Luthra to train himself in lieu of proper training, and 5) assigning Mr. Luthra nearly double the tasks assigned to his non-Indian coworkers.

254.    Defendant's discriminatory conduct was targeted towards Mr. Luthra because he is Indian. No similarly situated employees endured the discriminatory conduct that Mr. Luthra was forced to endure.

255.    Defendant's discriminatory conduct towards Mr. Luthra negatively and significantly impacted Mr. Luthra's life. Defendant's conduct made Mr. Luthra feel isolated, embarrassed, and ashamed.

256.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

257.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Luthra's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

258.   The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the MDHRO.

259.   Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIV**
**§ 11A-43(1), Code of Miami-Dade County**
**MDHRO RETALIATION**

260.   Mr. Luthra reincorporates the factual allegations in paragraphs 19 through 76.

261.   The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

262.   Mr. Luthra engaged in protected activity by repeatedly reporting Gelband and Haddadi's unlawful discriminatory behavior and comments during his employment.

263.   After many unsuccessful reports and complaints of discrimination and unlawful activity to Defendant's Human Resources team, Defendant began assigning Mr. Luthra additional tasks while continuing to racially disparage Mr. Luthra.

264.   In or around October of 2023, Mr. Luthra again engaged in protected activity by reporting Haddadi's discriminatory behavior to Defendant's Human Resources. Mr. Luthra explained that Haddadi discriminated against and disciplined Mr. Luthra but did not take any action against non-Indian coworkers. Following this report, Defendant extended Mr. Luthra's probationary period and terminated Mr. Luthra's employment.

265.   There is a causal connection between Mr. Luthra's reports of unlawful discrimination and Defendant terminating Mr. Luthra's employment.

266.   In response to Mr. Luthra opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Mr. Luthra.

267.   Defendant retaliated against Mr. Luthra by engaging in conduct, including but not limited to, 1) forcing Mr. Luthra to report to Haddadi after complaining about her, where she continued to make racially disparaging remarks towards him, 2) assigning Mr. Luthra additional tasks, 3) denying Mr. Luthra additional training, 4) extending Mr. Luthra's probationary period, and 5) unlawfully terminating Mr. Luthra.

268.   Defendant took the above-mentioned materially adverse actions, among others, against Mr. Luthra because of his protected activities.

269.   Any reasonable employee in Mr. Luthra's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Luthra was forced to endure.

270.     Defendant's alleged bases for its adverse employment actions against Mr. Luthra are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

271.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Mr. Luthra has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Mr. Luthra has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Mr. Luthra accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

272.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Mr. Luthra's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

273.     The conduct of Defendant deprived Mr. Luthra of his statutory rights guaranteed under the MDHRO.

274.     Mr. Luthra further requests that his attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements

of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the

Defendant's conduct in violation of the Section 1981, Title VII, FMLA, FCRA and MDHRO.

Dated:  Miami, Florida
         February 12, 2025,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com