## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-CV-20656-SINGHAL/Sanchez

RAVIPAL LUTHRA,

     **Plaintiff,**

vs.

UNIVERSITY OF MIAMI,

     **Defendant.**

_____/

### <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant, University of Miami ("University"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the Complaint and Demand for Jury Trial ("Complaint") (D.E. 1) filed by Plaintiff, Ravipal Luthra, for failure to state a claim.

As a threshold matter, the Complaint is a shotgun pleading, which impermissibly combines distinct legal theories and claims into all fourteen Counts of the Complaint. That is particularly problematic in this case, as the Complaint contains multiple discrimination and retaliation claims under a variety of statutes: 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"), the Florida Civil Rights Act of 1992, Fla Stat. § 760.01 *et seq.*, ("FCRA"), and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A, *et seq.* ("MDHRO"). Dismissal is warranted on that basis alone.

In addition, none of Plaintiff's fourteen Counts states a plausible claim for relief. The Complaint is long on conclusory allegations but short on ultimate facts demonstrating entitlement to relief. For this additional reason, the Complaint should be dismissed.

## INTRODUCTION

The following allegations are taken from Plaintiff's Complaint. (D.E. 1.) Plaintiff alleges that he is a Sikh Indian male who wears a turban for religious and cultural reasons. (D.E. 1 ¶¶ 24-25.) Plaintiff alleges that, in April 2021, he was hired by the University as a Clinical Research Coordinator Level 3. (*Id.* ¶ 26.) Plaintiff alleges that, in August 2021, he was demoted to Clinical Research Coordinator Level 1. (*Id.* ¶ 27.) Although Plaintiff alleges that he was "surprised" by the demotion, Plaintiff alleges that he "agreed to receive additional training following" his demotion. (*Id.* ¶ 28.)

Plaintiff alleges that, on March 21, 2022, a co-worker (Mr. Gelband) made a "barrage of the most despicable, discriminatory remarks" about Plaintiff's turban. (D.E. 1 ¶¶ 29-32.) However, other than that conclusory allegation, the Complaint identifies only a single comment about his turban: "Can you also tie that thing around your penis?" (*Id.* ¶ 30.) Plaintiff alleges that he reported the incident to his managers and that the University "took no effective action." (*Id.* ¶¶ 33-35.) Plaintiff's allegations are intentionally vague and demonstrably false. Attached hereto as Exhibit A is a copy of Plaintiff's internal complaint.[1] In fact, Plaintiff reported what he perceived to be religious[2] discrimination; noted that he did not accept his co-worker's apology for making the comment; and requested that "an internal review be opened." (Ex. A.) Approximately one hour after receiving Plaintiff's complaint, the University immediately forwarded it to the proper

---

[1]    This e-mail "may be considered without converting the motion to dismiss into a motion for summary judgment because it 'is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.'" *Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1272 n.5 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). *See also Swinford v. Santos,* No. 22-13675, 121 F. 4th 179, 187 (11th Cir. 2024) (citing *Johnson* and reiterating that a document not referenced in the complaint but attached to a motion to dismiss may be considered if it is central to the plaintiff's claim and its authenticity is not challenged).

[2]    Notably, Plaintiff has not asserted any claim premised on his religion. (*See* D.E. 1.)

department for investigation. (Ex. A.) Following that investigation, the co-worker was disciplined and issued a Final Written Warning. (Ex. B.)[3] Other than this single, isolated incident, Plaintiff does not identify any other similar remarks or any further issues with Mr. Gelband. (*See* D.E. 1.)

Plaintiff alleges that, in July 2023 (more than a year later), he was promoted to Clinical Research Coordinator Level 2. (D.E. 1 ¶ 36.) Plaintiff then alleges, in conclusory fashion, that he was "was the only Indian individual in his office and was treated differently by his colleagues." (*Id*. ¶ 37.) He further alleges, again in conclusory fashion, that he was treated "less favorably because he was Indian." (*Id*.) However, the Complaint fails to provide any supporting facts to support how he was treated differently or how that alleged disparate treatment was related to his race or national origin. (*See* D.E. 1.)

For example, Plaintiff alleges that he "was subjected to relentless harassment on the basis of his race and national origin" by another co-worker (Ms. Haddadi). (D.E. 1 ¶¶ 38-39.) However, Plaintiff merely alleges that his co-worker - - who was "effectively serving" as his supervisor - - assigned him various tasks and "screamed at him when he asked for help." (*Id*.) Plaintiff does not connect any of those alleged actions to his race or national origin. (*See* D.E. 1.)

Further evidencing that point, Plaintiff alleges that, on August 30, 2023, he e-mailed his Senior Manager to complain about his co-worker (Ms. Haddadi). (D.E. 1 ¶¶ 19, 40.) A true and correct copy of that e-mail is attached hereto as Exhibit C.[4] A review of Plaintiff's e-mail reveals that Plaintiff was not complaining about alleged discrimination; in fact, the e-mail does not even reference anything about Plaintiff's race, national origin or religion. (Ex. C.) Rather, the e-mail

---

[3]     The Final Written Warning, a copy of which is attached hereto as Exhibit B, may be considered for the same reasons set forth above.

[4]     The Court may consider this e-mail for the same reasons set forth above.

discusses Plaintiff's efforts to handle his "job duties" and acknowledges him "trying to catch up" with an important and "very busy" project and the stress he was experiencing as a result. (Ex. C.)

Next, Plaintiff alleges that, on October 28, 2023, he sent another e-mail to his Senior Manager about his "stressful" working situation and difficulty working with his co-worker (Ms. Haddadi). (D.E. 1 ¶¶ 19, 42-43.)[5] As with his e-mail dated August 30, Plaintiff did not complain about alleged discrimination; rather, Plaintiff complained about non-actionable work stress.

Plaintiff alleges that, "shortly thereafter" (given the context, presumably sometime after his e-mail dated October 28), he suffered a panic attack, was diagnosed with anxiety and was recommended by his doctor to request FMLA leave. (D.E. 1 ¶¶ 45-46.) Plaintiff alleges that, "in or around December 15, 2023," he applied for FMLA leave. (*Id*. ¶ 47.) He further alleges that, "on the very same day," he was disciplined when his probationary period of employment was arbitrarily extended. (*Id*.) However, Plaintiff purposely attempts to mislead the Court with respect to the relevant timeline in order to manufacture evidence of retaliatory causation. A review of the relevant accommodation/eave documents and probation extension memorandum (all of which the Court can consider for the reasons set forth in footnote 1) belie Plaintiff's mischaracterizations.

First, as Plaintiff himself acknowledged in a signed Extension of Probationary Period form (attached hereto as Exhibit D), when Plaintiff was promoted to the Clinical Research Coordinator Level 2 position in July 2023, he was placed on a 6-month probationary period - - from July 10, 2023, through January 10, 2024. (Ex. D.) On December 4, 2023 (*i.e.*, toward the end of his 6-month probationary period), Plaintiff advised that he intended to request intermittent FMLA leave for the period January 1, 2024, through July 1, 2024. (Ex. E.) By letter dated December 11, 2023

---

[5]     The University has not attached a copy of this alleged e-mail to this Motion because the University has been unable to confirm its existence. Accordingly, the University recites Plaintiff's own characterizations of the e-mail.

(attached hereto as Exhibit E), the University advised Plaintiff that he needed to return a doctor's certification to support his request. (Ex. E.) By letter dated December 29, 2023 (attached hereto as Exhibit F), the University advised Plaintiff that his request was approved and that he had 480 hours of intermittent FMLA leave entitlement from January 1, 2024, through July 1, 2024. (Ex. F.) Meanwhile, on December 15, 2023, Plaintiff's six-month probationary period was extended for an additional 30 days given Plaintiff's performance deficiencies, which were set forth in a written memorandum issued to and signed by Plaintiff. (Ex. D.)

Plaintiff alleges that, after the University approved his request for FMLA intermittent leave, he "continued to work and take intermittent leave for several months." (D.E. 1 ¶¶ 48, 51.) He then alleges, with absolutely no supporting facts, that his co-worker's (Ms. Haddadi's) "discriminatory and harassing conduct persisted as she targeted [Plaintiff] because of his race and national origin." (*Id*. ¶ 52.) The Complaint does not identify a single instance of discriminatory or harassing conduct, nor does the Complaint identify how any such conduct was premised on Plaintiff's race or national origin. (*See* D.E. 1.)

Plaintiff alleges that, on March 11, 2024, his employment was terminated. (D.E. 1 ¶ 57.) A true and correct copy of Plaintiff's termination letter is attached hereto as Exhibit G.[6] Therein, the University recited that, when Plaintiff was promoted to the Clinical Research Coordinator Level 2 position in July 2023, he was placed on a 6-month probationary period. (Ex. G.) That probationary period was extended for thirty days in December 2023 and for another 30 days in January 2024 to "afford [Plaintiff] the opportunity to improve and address several aspects of [his] work

---

[6] The Court may consider this letter for the same reasons set forth above. *See also Chambers v. Cherokee Cnty.*, 743 Fed. Appx. 960, 963 n.1 (11th Cir. 2018) (noting that the court properly considered exhibits attached to the defendant's motion to dismiss, including "the notice of termination letter sent to Plaintiff," pursuant to the incorporation-by-reference doctrine).

performance." (*Id.*) "Despite the provision of training, resources and the extension of [his] probationary period, [he] continue[d] to demonstrate significant deficiencies in [his] performance which makes [his] continued employment with the University of Miami untenable." (*Id.*) "As a result of [his] unsatisfactory work performance, [his] employment with the University [was] terminated effective immediately." (*Id.*)

Plaintiff alleges that, <u>after</u> his employment was terminated, he contacted a Human Resources Manager at the University and reported, "Over the past few months, I have observed several instances of bias within our workplace. These biases have manifested in various forms, including unequal treatment, favoritism, and exclusionary practices. . . . [and include] the recent decision to terminate my employment." (*Id.* ¶¶ 22, 61) (alternations in original).

In his "Factual Allegations" section - - which composes Paragraphs 19-76 of his Complaint and which are incorporated by reference into all Counts of the Complaint - - Plaintiff alleges that (1) he was discriminated against for his race and national origin and for taking FMLA leave (D.E. 1 ¶ 63); (2) he was retaliated against for opposing the University's "unlawful employment practices" and for "exercising his FMLA rights" (D.E. 1 ¶ 64); (3) the University violated "Section 1981, Title VII, the FMLA, the FCRA and the MDHRO" by subjecting Plaintiff to "disparate treatment, hostile work environment, retaliation and wrongful termination" (D.E. 1 ¶ 68); and (4) the University violated "Section 1981, Title VII, the FMLA, the FCRA and the MDHRO" through "discrimination, retaliation and unlawful termination" (D.E. 1 ¶ 69).

Based on the foregoing allegations, Plaintiff attempts to assert a hodgepodge of discrimination and retaliation claims. For ease, Plaintiff's claims are summarized below:

| Count | Claim | Statute |
|---|---|---|
| I | Race and National Origin Discrimination | Section 1981 |
| II | Hostile Work Environment | Section 1981 |

| III | Retaliation | Section 1981 |
|-----|-------------|--------------|
| IV | Race and Color Discrimination | Title VII |
| V | Hostile Work Environment | Title VII |
| VI | Retaliation | Title VII |
| VII | Interference | FMLA |
| VIII | Retaliation | FMLA |
| IX | Race and National Origin Discrimination | FCRA |
| X | Hostile Work Environment | FCRA |
| XI | Retaliation | FCRA |
| XII | Race and National Origin Discrimination | MDHRO |
| XIII | Hostile Work Environment | MDHRO |
| XIV | Retaliation | MDHRO |

**ARGUMENT**

Plaintiff's Complaint suffers from numerous defects. First, the Complaint is an impermissible shotgun pleading, which improperly (1) incorporates by reference dozens of paragraphs of general allegations into fourteen separate counts; and (2) groups together distinct and unrelated claims. Second, the Complaint fails to state any plausible claim, as a matter of both fact or law. For either or both of these reasons, the Complaint should be dismissed.

**I.      THE COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING.**

Fed. R. Civ. P. 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Relatedly, Fed. R. Civ. P. 10 requires that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." A complaint "must make it possible 'to know which allegations of fact are intended to support which claim(s) for relief.'" *Am. Cas. Co. of Reading v. Superior Pharmacy, LLC*, No. 813CV00622T27TBM, 2013 WL 12156519, at *1 (M.D. Fla. Oct. 29, 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). "Neither the

Court, nor the Defendants, should be required to 'sift through the facts presented and decide for [itself] which are material to the particular cause of action asserted.'" *Id.* (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002)).

Complaints that violate Rule 8(a) and/or Rule 10(b) are referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Several different kinds of shotgun pleadings exist. *Id.* One example is a complaint in which, based on incorporation of various factual allegations, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Relatedly, a shotgun pleading may begin "with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). These "general allegations are incorporated by reference into each count of the complaint." *Id.* "The problem with a shotgun complaint is that most of the counts 'contain irrelevant factual allegations and legal conclusions.'" *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1296 (M.D. Fla. 2014) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)).

District courts routinely dismiss such complaints, and the Eleventh Circuit routinely affirms such dismissals. *See, e.g.*, *Johnson Enters.* 162 F.3d at 1332 (labeling a complaint, which "began with thirty-seven paragraphs of general allegations that were incorporated by reference into each count of the complaint," as a shotgun pleading); *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (affirming dismissal of shotgun complaint, in which, because of incorporation of general allegations, multiple counts "include factual allegations that are immaterial to the underlying causes of action").

These same defects exist here. Each Count incorporates by reference all 58 paragraphs of general allegations. (Compl. ¶¶ 77, 91, 105, 127, 141, 155, 176, 185, 201, 212, 223, 238, 249, 260.) As a result, many of the incorporated allegations simply have no relation to the Count into which they are incorporated. For example, allegations based on racial discrimination (which relate to Counts I, IV, IX and XII) are alleged in unrelated claims for FMLA interference and retaliation (Counts VII and VIII). Further, given the incorporation of Paragraphs 68-69 (which expressly allege violations of Section 1981, Title VII, the FMLA, the FCRA and the MDHRO) into all Counts, each Count actually contains claims under all of those different statutes. That type of shotgun pleading warrants dismissal under Eleventh Circuit precedent. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 and 1126 n.3 (11th Cir. 2014) (collecting more than twenty cases).

Relatedly, Counts I, IV, IX and XII each purport to allege claims of race and color discrimination, or race and national origin discrimination, within the same Count. "It is impermissible to combine multiple claims with different legal standards into one count." *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, No. 2:14-CV-14420, 2015 WL 9094201, at *12 (S.D. Fla. Dec. 16, 2015) (quoting *Apothecary Dev. Corp. v. City of Marco Island, Fla.*, No. 2:10-CV-392-FTM-36, 2011 WL 1071448, at *2 (M.D. Fla. Mar. 18, 2011)). "[E]ach theory of liability on which the discrimination claim is based constitutes a separate cause of action—and therefore must be pled in a separate count." *Amaya v. Vilsack*, No. 23-CV-22838, 2024 WL 1285162, at *2 (S.D. Fla. Mar. 26, 2024) (quotations and citations omitted). These defects warrants dismissal. *See, e.g,*, *Jackson v. Sect. of Dept. of Veterans Affairs*, No. 8:17-cv-1673-T-36TGW, 2018 WL 4091988, at *2 (M.D. Fla. Aug. 27, 2018) (dismissing claim that lumped together what appeared to be a claim for disability discrimination with a claim for disparate treatment based on race and gender and stating that such issues were not mere "technical defects"); *Thomas v. Univ. of Miami*, No. 22-

20296 CIV, 2022 WL 17400904, at *2 (S.D. Fla. Dec. 2, 2022) (dismissing claim "premised on both religious discrimination and disability discrimination").

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The above analysis should end the inquiry. Notwithstanding, the Court may address other bases for dismissal. *See Silver Crown Invest., LLC v. Team Real Estate Mgmt., LLC,* 349 F. Supp. 3d 1316, 1334 (S.D. Fla. 2018). Even on the merits, the Complaint properly should be dismissed.

### A.    Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570).

In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their 'judicial experience and common sense.'" *Speed Dry, Inc. v. Scottsdale Ins. Co.*, No. 618CV1473ORL37KRS, 2018 WL 8369146, at *1 (M.D. Fla. Oct. 22, 2018) (quoting *Iqbal*, 556 U.S. at 679 and *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012)). A complaint is insufficient "when it suggests that an [adverse employment] action was

taken" for a reason unrelated to discrimination. *Fulton v. Richardson*, No. 2:18CV623-MHT-GMB, 2019 WL 1245810, at *3 (M.D. Ala. Jan. 31, 2019) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010)), *R&R adopted*, 2019 WL 1245782 (M.D. Ala. Mar. 18, 2019).

Finally, the Court must consider "documents central to, referenced in, or attached to the complaint, and matters judicially noticed." *Caron Found. of Fla., Inc. v. City of Delray Beach*, No. 12-80215-CIV, 2012 WL 12855473, at *1 (S.D. Fla. June 6, 2012) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). "If the exhibits contradict the allegations of the complaint, then the exhibits control." *Id*. (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)).

### B.      Overview of Plaintiff's Claims

Stripped of lawyer rhetoric and employment-law buzz-words, the gravamen of the Complaint can be summarized as follows: (1) Plaintiff is a Sikh Indian male; (2) Plaintiff requested and received FMLA leave; (3) Plaintiff's employment was terminated; and (4) Plaintiff's termination must be based on his race, national origin and/or FMLA leave. The Complaint fails to provide the requisite supporting facts to connect Plaintiff's termination to any of those protected classifications. Further, given the Extension of Probationary Period memorandum (Exhibit D) and termination letter (Exhibit F) incorporated into the Complaint by reference and attached hereto, the only plausible explanation for Plaintiff's termination was his unsatisfactory work performance during his probationary period. That does not give rise to any claim for relief.

As summarized above, the Complaint contains fourteen separate Counts. Many of Plaintiff's claims can be analyzed together. Claims under Section 1981, Title VII, FCRA and MDHRO are evaluated under the same framework. *See, e.g.*, *Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203, 1258 (S.D. Fla. 2022) (collecting cases for the proposition that the "Eleventh

Circuit has repeatedly indicated that discrimination claims brought under § 1981, the FCRA, and Title VII should be analyzed under the same framework"); *Eliassaint v. RTG Furniture Corp.*, 551 F. Supp. 3d 1293, 1310 (M.D. Fla. 2021) (collecting cases for the proposition that retaliation claims "under Title VII, the FCRA, and § 1981 are analyzed under the same framework"); *Castillo v. Roche Labs., Inc.*, 467 Fed. Appx. 859, 862 (11th Cir. 2012) (applying Title VII framework to MDHRO claims); *City of Miami v. Hervis*, 65 So. 3d 1110, 1116 (Fla. 3d DCA 2011) (same).

Further, retaliation claims under the FMLA are analyzed under the same framework as Title VII claims. *Lapham v. Walgreen Co.*, 88 F.4th 879, 893 (11th Cir. 2023) (adopting Title VII's but-for causation standard for FMLA retaliation claims); *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021) (applying Title VII framework to FMLA retaliation claim).

Against this backdrop, each of Plaintiff's claims is addressed below.

## C. Section 1981 Does Not Apply to National Origin, and Those Portions of Counts I, II and III Must Be Dismissed.

Count I, II and III purport to be claims under Section 1981 premised on Plaintiff's race and national origin. (D.E. 1 ¶¶ 77-126.) However, it is well-established that claims for national origin discrimination are not cognizable under Section 1981 as a matter of law. *See, e.g.*, *Tippie v. Spacelabs Med., Inc.*, 180 F. App'x 51, 56 (11th Cir. 2006) ("By its very terms, § 1981 applies to claims of discrimination based on race, not national origin."); *Subotic v. Jabil, Inc.*, No. 8:21-CV-2137-VMC-SPF, 2022 WL 10487074, at *13 (M.D. Fla. Oct. 18, 2022) ("Subotic's Section 1981 claims fail because they are based only on his national origin"); *Joseph v. Fla. Quality Truss Indus., Inc.*, No. 05-61045 CIV, 2006 WL 3519095, at *4 (S.D. Fla. Dec. 6, 2006) ("§ 1981 does not encompass claims for discrimination based upon national origin"). Accordingly, the portions of Plaintiff's Section 1981 claims premised on his national origin should be dismissed with prejudice.

**D.      Plaintiff's Discrimination Claims (Counts I, IV, IX and XII) Should Be Dismissed.**

Counts I, IV, IX and XII purport to be claims for race, color and/or national origin discrimination. (D.E. 1 ¶¶ 77-90, 127-140, 201-211, 238-248.) Each expressly is premised on a theory of disparate treatment - - *i.e.*, that Plaintiff was treated differently than similarly-situated members outside his protected classes. (*Id*. ¶¶ 68, 81, 131, 204, 241.) To plausibly allege this type of claim, the Complaint must identify a similarly-situated individual (*i.e.*, a "comparator"):

> To nudge his claim across the line of plausibility, Plaintiff must identify a specific comparator and allege sufficient facts to show that he and his comparator "are similarly situated in all relevant respects." *See Word v. AT&T*, 576 Fed. Appx. 908, 914 (11th Cir. 2014) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). This would require, for example, allegations that plaintiff and his proffered comparators have the same employment history, work responsibilities, and superiors. Conclusory statements that a plaintiff was treated differently than members outside his protected class are insufficient.

*Brookshire v. GMR Mktg. LLC*, No. 22-CV-80756, 2022 WL 4124302, at *5 (S.D. Fla. Aug. 17, 2022), *R&R adopted*, 2022 WL 4119729 (S.D. Fla. Sept. 9, 2022) (dismissing discrimination claim). *See also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming dismissal of Section 1981 claim because plaintiffs "failed to identify any specific nonminority employees . . . who were treated differently in other similar cases"); *Misquith v. Palm Beach Cnty. Health Care Dist.*, No. 20-CV-81123-AMC, 2021 WL 8055475, at *6 (S.D. Fla. Sept. 29, 2021) (dismissing discrimination claims because "they lack any allegations about similarly-situated comparators"), *R&R adopted*, 2022 WL 782545 (S.D. Fla. Mar. 15, 2022), *aff'd*, 2023 WL 2156635 (11th Cir. Feb. 22, 2023).

Here, Plaintiff offers only conclusory allegations that he was treated differently because of his race, color and/or national origin. That is insufficient to state a claim. *See, e.g., Achon v. Miami-*

*Dade Cnty.*, No. 15-20711-CIV, 2015 WL 12564322, at *4 (S.D. Fla. June 10, 2015) ("The County argues the Complaint should be dismissed because Achon fails to allege sufficient facts to support his claim of purposeful discrimination on account of Achon's age, and instead, only supplies conclusory allegations of discrimination. . . . The Court agrees."); *Ferguson v. Miami Dolphins*, No. 20-24483-CIV, 2021 WL 2823581, at *9 (S.D. Fla. July 7, 2021) ("The Plaintiffs' argument that they have also sufficiently alleged the County's discriminatory intent is equally problematic. . . . The Defendants further point out that all the Plaintiffs' allegations of discriminatory motive are conclusory, unsupported by any actual facts. . . . The Court agrees with the Defendants.").

**E.      Plaintiff's Hostile Work Environment Claims (Counts II, V, X and XIII) Should Be Dismissed.**

Count II, V, X and XIII purport to be claims premised on a hostile work environment. (D.E. 1 ¶¶ 91-104, 141-154, 212-222, 249-259.) "To establish a hostile work environment claim under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Nurse v. City of Alpharetta*, 775 Fed. Appx. 603, 607 (11th Cir. 2019) (citations and alterations omitted).[7]

Here, other than conclusory allegations, the Complaint identifies a single instance of purported harassment related to his race: the comment about his turban. (D.E. 1 ¶¶ 29-35.) That single incident - - more than a year before any alleged adverse employment action - - is insufficient to sustain this claim for two independent reasons. First, such isolated comments are not actionable. *See, e.g.*, *Truss v. Harvey*, 179 Fed. Appx. 583, 588 (11th Cir. 2006) ("an isolated, stray comment

---

[7]      The Complaint acknowledges that, to state such a claim, Plaintiff must allege sufficient facts to show that he was subject to a "severe and pervasive" environment premised on his race, color or national origin. (D.E. 1 ¶¶ 95-96, 145-146, 215-216, 252-253.)

unrelated to the decisional process" did not establish discrimination); *Thomas v. Dolgencorp, LLC*, 645 Fed. Appx. 948, 951 (11th Cir. 2016) (stray comment that "we'll burn his black ass" was not evidence of discrimination).

Second, the Eleventh Circuit repeatedly has found that conduct, which was significantly more frequent and hostile in nature than the conduct alleged here, <u>does not</u> constitute actionable harassment as a matter of law. *See, e.g.*, *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1335 (11th Cir. 2023) (holding that repeated, racist comments about President and First Lady Obama ("Michelle Obama looks like a monkey"; the "President is a piece of sh*t" who "needs to go back to Africa") and Black hospital patients (referring to them as "boy" or "girl," "crack heads," "welfare queens," or "ghetto fabulous") were insufficient, as a matter of law, to constitute a hostile work environment); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (holding that the following facts were insufficient to establish a hostile work environment: plaintiff's co-workers wore the Confederate flag on a regular basis, there was racist graffiti in the men's restroom that the plaintiff used on a daily basis, he heard people use the slur "n***er" a few times and someone once placed a noose in the breakroom).

Accordingly, this claim should be dismissed.[8]

### F.   Plaintiff's Retaliation Claims (Counts III, VI, XI and XIV) Should Be Dismissed.

Count III, VI, XI and XIV purport to be claims premised on retaliation. (D.E. 1 ¶¶ 105-126, 155-175, 223-237. 260-274.) To establish a *prima facie* case of retaliation, a plaintiff must

---

[8]      Judge Moreno recently dismissed a similarly-deficient claim for hostile work environment brought by the same lawyer representing the Plaintiff in this case: "Under prevailing precedent in this circuit, Defendant's conduct does not rise to the severity level determined actionable by the cases discussed above. . . . Accordingly, the Court dismisses Count II without prejudice." *Harkins v. Hillstone Rest. Grp., Inc.*, No. 24-23800-CIV, 2025 WL 522674, at *8 (S.D. Fla. Feb. 18, 2025) (Moreno, J.)

allege that (1) he participated in protected activity; (2) he was subjected to an adverse employment action; and (3) the adverse employment action was causally connected to his protected activity. *Morris v. Potter*, 251 Fed. Appx. 667, 669 (11th Cir. 2007) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004)). Further, the plaintiff "must prove that but for the protected conduct, the defendant would not have taken the particular adverse action." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (collecting cases).

To demonstrate protected activity, a plaintiff must allege that (1) he complained about alleged discrimination, (2) his complaint was based on his subjective belief that his employer was engaged in unlawful employment practices; and (3) his belief was objectively reasonable in light of the circumstances. *Saffold v. Special Counsel, Inc.*, 147 Fed. Appx. 949, 951 (11th Cir. 2005) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)). An "employee's statement or communication cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice of the employer that is allegedly unlawful. 'Vagueness as to the nature of the grievance . . . prevents a protest from qualifying as a protected activity.'" *Guess v. City of Miramar*, 889 So. 2d 840, 847 (Fla. 4th DCA 2004)[9] (quoting *Dupont–Lauren v. Schneider (USA), Inc*., 994 F. Supp. 802, 823 (S.D. Tex. 1998)).

Further, generic complaints about "discrimination" or "unfair treatment" - - unconnected to a protected characteristic - - do not constitute protected activity. *See, e.g.,*, *Suber v. Lowes Home Centers*, 845 Fed. Appx. 899, 900 (11th Cir. 2021) ("Suber's August 11, 2017 email makes only generic allegations concerning his unfair treatment as well as the shortcomings of Lowe's response

---

[9]     The Fourth District Court of Appeal has receded from *Guess*, now holding that a retaliation claim under the FCRA is subject to the "but-for" causation standard. *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017). However, *Guess* is still good law for the proposition cited above.

to the August 3, 2017 incident. At no point does the email allege discrimination on the basis of a protected characteristic, as Suber concedes. Accordingly, Suber has not shown that he engaged in statutorily protected activity.") (citing *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs.*, 47 F.3d 1068, 1074 (11th Cir. 1995)); *Carter v. Fla. Automotive Servs. LLC,* No. 8:13-cv-143-T-30, 2014 WL 3385048, at *9 (M.D. Fla. July 10, 2014) ("an employee's complaint must reasonably convey that he is opposing discrimination based specifically upon race versus some other type of discrimination or injustice generally").

Here, the only potentially-actionable "protected activity" identified in the Complaint is Plaintiff's complaint in March 2022 regarding the stray comment about his turban. (D.E. 1 ¶¶ 29-35.)[10] However, that complaint was years before any adverse employment action, such as Plaintiff's termination in March 2024. To show but-for causation, there <u>must</u> be "close temporal proximity between the statutorily protected activity and the adverse action." *Adams v. City of Montgomery*, 569 Fed. Appx. 769, 773 (11th Cir. 2014). "Nineteen months [between complaint and termination] does not satisfy that requirement" of close temporal proximity. *Id*. at 774.

Other courts have reasoned similarly. *See, e.g.*, *Stone v. Geico Gen. Ins. Co*., 279 Fed. Appx. 821, 824 (11th Cir. 2008) ("causation was lacking [because] . . . the employer learned of the protected activity 20 months before the adverse action."); *Santiago v. Univ. of Miami*, No.

---

[10]     Plaintiff's complaints about workplace stress from interactions with his co-worker were not based on any protected characteristic and, therefore, are not actionable for the reasons set forth above. Plaintiff's post-termination complaints about undefined "bias" and "unequal treatment" fail for the same reasons. Further, as a matter of law and common sense, post-termination complaints cannot constitute protected activity; an employee cannot terminate someone in retaliation for a complaint that was not made until *after* the termination decision was made. *See Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 Fed. Appx. 626, 628 (11th Cir. 2007) (dismissing retaliation claim because, "[w]hile an EEOC complaint constitutes protected activity under Title VII, Satchel did not engage in this activity while she was still employed by the School Board and, thus, has failed to establish a causal connection between the protected activity and her termination from employment, which is necessary to sustain a claim of retaliation").

1:22-CV-23384, 2023 WL 3045417, at *11–12 (S.D. Fla. Apr. 6, 2023) ("In determining the temporal proximity between statutorily protected activity and the adverse employment action, courts begin their calculation on the date the employer gains the knowledge of said protected activity . . . . Due to the multiple year gap between Ms. Santiago's initial complaints and her resignation, the FAC does not satisfy the 'very close' temporal proximity required to show causation."), *R&R adopted*, 2023 WL 3043414 (S.D. Fla. Apr. 21, 2023). A similar temporal gap exists here and warrants dismissal.

### G.   Plaintiff's FMLA Claims (Counts VII and VIII) Should Be Dismissed.

The FMLA creates two types of claims -- interference claims and retaliation claims. *Norman v. H. Lee Moffitt Cancer Ctr. & Research Inst., Inc.*, No. 21-12095, 2023 WL 2146593, at *2 (11th Cir. Feb. 22, 2023) (citing 29 U.S.C. § 2615(a)(1)–(2) and *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000)). Plaintiff attempts to assert an interference claim in Count VII (D.E. 1 ¶¶ 176-184) and a retaliation claim in Count VIII (D.E. 1 ¶¶ 185-200). However, he has failed to state either claim.

"To establish a prima facie FMLA interference claim, an employee must show, inter alia, that she was entitled to a benefit under the FMLA that was denied." *Id*. (citing 29 U.S.C. § 2615(a)(1) and *Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006)). "A plaintiff is not denied a benefit under the FMLA when she receives all the leave she requests." *Id*. (citing *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999)). When "an employer did not deny leave time, the plaintiff cannot establish an FMLA interference claim, even when the employer terminated her and prevented her from the continued use of such leave." *Id*. (citing *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020)). Here, Plaintiff alleges that the University

approved his request for FMLA leave and permitted him to take same. (D.E. 1 ¶¶ 46-48, 51.) Therefore, he has not stated an interference claim.

His retaliation claim fares no better. "To establish an FMLA retaliation claim, an employee must show her employer intentionally discriminated against her for exercising a right guaranteed under the FMLA." *Norman,* 2023 WL 2146593, at *2 (citing *Strickland v. Water Works and Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1207 (11th Cir. 2001)). "For the purposes of an FMLA retaliation claim, a statutorily protected activity is 'opposing any practice made unlawful by this subchapter.' *Ramos v. Univ. of Miami*, No. 21cv-22151-BLOOM/McAliley, 2021 WL 4949160, at *2 (S.D. Fla. Oct. 25, 2021) (quoting 29 U.S.C. 2615(a)(2)). *See also Baretto v. WGCC, Inc.* No. 06-21823-CIV-GOLD/TURNOFF, 2007 WL 9702904, at *3 (S.D. Fla. Jan. 5, 2007) (to allege the first element of an FMLA retaliation claim, "a plaintiff must allege facts showing she opposed a practice that is unlawful under the Act") (citing *Walker v. Elmore County Bd. of Educ.*, 379 F. 3d 1249, 1253 (11th Cir. 2004)).

Here, the Complaint fails to allege that Plaintiff ever opposed any unlawful act under the FMLA (*e.g.*, by raising a complaint related to the FMLA). That failure alone mandates dismissal of the retaliation claim. *See Rohttis v. Sch. Dist. of Lee Cnty.*, No. 2:21-CV-737-JES-NPM, 2022 WL 3028071, at *5 (M.D. Fla. Aug. 1, 2022) ("Because Plaintiff has not adequately alleged that she engaged in any protected activity under the FMLA, Plaintiff cannot plausibly show that a causal link exists between any protected activity and adverse employment action. The Court therefore grants Defendant's motion to dismiss.").

Further, the Complaint fails to allege the requisite but-for causation between his FMLA leave and his termination. By the time Plaintiff requested and took FMLA, his performance already was under review, as he was in the middle of his probationary period (which later was extended,

twice, due to performance issues). The law is clear that "the failure to complete the probationary period is a facially legitimate, non-discriminatory reason for termination." *Valenzuela v. GlobeGround N. Am., LLC,* 18 So. 3d 17, 24 (Fla. 3d DCA 2009) (citing *Bicknell v. City of St. Petersburg*, No. 8:03-CV-1045-T-27, 2006 WL 560167, at *11 (M.D. Fla. Mar. 7, 2006) (failure to complete the probationary period is a facially legitimate, non-discriminatory reason for termination) and *Winegard v. W.S. Badcock Corp*., No. 8:06-cv-1594T7TGW, 2008 WL 1848787, at *7 (M.D. Fla. Apr. 23, 2008) ("A company is not required by law to retain sub-par employees who under-perform their duties.")).

Because Plaintiff was on "thin ice" at the time he requested FMLA leave, Plaintiff cannot establish the requisite causation between his leave and any adverse action. *Fonte v. Lee Mem'l Health Sys.*, No. 20-13240, 2021 WL 5368096, at *6 (11th Cir. Nov. 18, 2021) (rejecting FMLA retaliation claim, even though employee "was fired the day after her FMLA leave ended," because employer had concerns about employee's performance and had contemplated terminating her prior to her leave request).

## CONCLUSION

The Complaint is a shotgun pleading that fails to state any plausible claim against the University. Accordingly, it properly should be dismissed.

WHEREFORE, the University respectfully requests that the Court (1) dismiss the Complaint (D.E. 1) as set forth above; (2) award the University its attorneys' fees and costs to the fullest extent permitted by applicable law, including, but not limited to, under the Civil Rights Statutes (42 U.S.C. § 1988), Title VII (42 U.S.C. § 2000e-5(k)), the FCRA (Fla. Stat. § 760.11(5)) and the MDHRO (Sec. 11A-5(10)); and (3) grant such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**

601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
       Eric D. Isicoff
       Florida Bar No. 372201
       Isicoff@irlaw.com
       Teresa Ragatz
       Florida Bar No. 545170
       Ragatz@irlaw.com
       Christopher M. Yannuzzi
       Florida Bar No. 92166
       Yannuzzi@irlaw.com

## <u>CERTIFICATE OF SERVICE</u>

   I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via

CM/ECF this 29th day of May, 2025, upon the following:

Daniel J. Barroukh
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, Florida 33131
(305) 946-1884
danielb@dereksmithlaw.com

               By: /s/ Christopher M. Yannuzzi
                      Christopher M. Yannuzzi