*EXHIBIT "E"*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | CHR #F-11190<br>510-2024-07394 |

| Florida Commission on Human Relations, the Miami-Dade Commission on Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>Mr. Ravipal Luthra | Home Phone *(Incl. Area Code)*<br>( ███ | Date of Birth<br>████ |
|---|---|---|
| Street Address<br>████ | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>University of Miami | No. Employees, Members<br>15+ | Phone No. *(Include Area Code)*<br>305-243-9610 |
|---|---|---|
| Street Address<br>5187 Ponce De Leon Blvd. | City, State and ZIP Code<br>Coral Gables, FL 33146 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [X] DISABILITY   [ ] GENETIC INFORMATION
[X] OTHER (Specify) Hostile Work Environment

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 04/01/2021   Latest 03/13/2024
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Claimant, RAVIPAL LUTHRA, alleges that Respondent, UNIVERSITY OF MIAMI, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Americans with Disabilities Act as amended, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2612 et seq.; the Florida Civil Rights Act, Fla. Stat. § 760.01; and the Miami-Dade Code of Ordinances 97-17, Article IV, Chapter 11A, et seq. Mr. Luthra's theories of discrimination include disparate treatment, hostile work environment, retaliation and wrongful termination because of his race, national origin, and disability.

THE STATEMENT OF THE PARTICULARS AND SWORN AND SIGNED VERIFICATION BY CLAIMANT ATTACHED HERETO ARE FULLY INCORPORATED HEREIN BY REFERENCE

NOTE: Fernando Lopez is a point of contact for UNIVERSITY OF MIAMI, and he can be contacted via electronic mail at fernandolopez@miami.edu

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Ravipal* |
| 05 / 15 / 2024<br>*Date*       *Ravipal* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

2.  **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# DEREK SMITH
## LAW GROUP, PLLC
### Sexual Harassment and Discrimination Lawyers

**New York | Los Angeles | Philadelphia | Miami | New Jersey | San Francisco**

May 15, 2024

**<u>VIA THE EEOC E-FILE FOR ATTORNEYS PORTAL ONLY</u>**

U.S. Equal Employment Opportunity Commission
Miami District Office
100 SE 2nd Street, Suite 1500
Miami, FL 33131

> **Re:** *Ravipal Luthra v. UNIVERSITY OF MIAMI*[1]

Dear Investigator:

Our law firm represents the Charging Party, Mr. Ravipal Luthra, in connection with his claims arising from his employment with UNIVERSITY OF MIAMI

Mr. Luthra's claims against UNIVERSITY OF MIAMI, include those arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Americans with Disabilities Act as amended, 42 U.S.C. § 12101 *et seq*.; the Family and Medical Leave Act, 29 U.S.C. § 2612 *et seq*.; the Florida Civil Rights Act, Fla. Stat. § 760.01; and the Miami-Dade Code of Ordinances 97-17, Article IV, Chapter 11A, *et seq.* Mr. Luthra's theories of discrimination include disparate treatment, hostile work environment, retaliation and wrongful termination because of his race, national origin, and disability.

Please dual-file Mr. Luthra's Charge with the Florida Commission on Human Relations and the Miami-Dade Commission on Human Rights.

| <u>Charging Party</u> | <u>Respondent</u> |
|---|---|
| Ms. Ravipal Luthra<br>*Via Claimant's Counsel*<br>Derek Smith Law Group, PLLC<br>Attn. Kyle T. MacDonald, Esq.<br>520 Brickell Key Dr, Suite O-301<br>Miami, FL 33131<br>Tel: (786) 568-8120<br>Danielb@dereksmithlaw.com | UNIVERSITY OF MIAMI<br>Attn. Fernando Lopez<br>1550 NW 10th Avenue, Suite 340<br>Miami, FL 33136<br>fernandolopez@miami.edu |

---

[1] Mr. Luthra demands Respondent preserve all physical and electronic information pertaining in any way to Mr. Luthra's employment, to Mr. Luthra's potential claims including damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in any subsequent litigation to the Commission's investigation.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

*Upon information and belief, Claimant alleges as follows:*

1.    Claimant, Ravipal Luthra ("Claimant" or "Mr. Luthra"), is an individual male residing in Broward County, Florida.

2.    Respondent, UNIVERSITY OF MIAMI ("Respondent UM"), is a Florida not-for-profit Corporation, with its principal place of business located at 5187 Ponce De Leon Blvd. Coral Gables, FL 33146.

3.    At all times material, Respondent employed Mr. Luthra at their Miami facility, located at 1550 NW 10th Avenue, Room #340J, Miami, FL 33136.

4.    At all times material, Nathalie Padron ("Padron") was a non-Indian individual female who was employed by Respondent as a Senior Manager. At all times material, Padron held supervisory authority over Mr. Luthra, including the power to hire, fire, demote, and promote Mr. Luthra.

5.    At all times material, Monuel Aulov ("Aulov") was a non-Indian individual male who was employed by Respondent as a Director. At all times material, Aulov held supervisory authority over Mr. Luthra, including the power to hire, fire, demote, and promote Mr. Luthra.

6.    At all times material, Porsche Elisa Belidor ("Belidor") was a non-Indian individual female who was employed by Respondent as a Human Resources ("HR") Manager.

7.    At all times material, Fernando Lopez ("Lopez") was a non-Indian individual male who was employed by Respondent as a Human Resources ("HR") Manager.

8.    At all times material, Savoy Smith III ("Smith") was a non-Indian individual male who was employed by Respondent as a Human Resources ("HR") Manager.

9.    Respondent' exact number of employees is unknown, but upon information and belief, there are well more the statutory minimum.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

## MATERIAL FACTS

10.     At all times material, Mr. Luthra was a disabled Indian male and was therefore a protected class member.

11.     Mr. Luthra wears a turban, which carries deep significance to him as it represents his identity and religion.

12.     In or around April of 2021, Mr. Luthra was hired by Respondent as a Clinical Research Coordinator ("CRC") level three (3).

13.     In or around August of 2021, however, Respondent demoted Mr. Luthra to a CRC level one (1). This demotion came with a nearly $15,000.00 decrease in pay, yet Mr. Luthra's hours remained unchanged.

14.     Mr. Luthra was surprised by the demotion because Respondent never complained to him about his performance or issued him with any write-ups, yet demoted him and decreased his wage by nearly twenty (20) percent. However, Mr. Luthra agreed to receive additional training prior following this demotion.

15.     In or around March 21, 2022, Todd Gelband ("Gelband"), a non-Indian individual male who was employed by Respondent as a Clinical Research Data Specialist, subjected Mr. Luthra to a barrage of the most despicable, discriminatory remarks that he has ever endured.

16.     Gelband mocked Mr. Luthra's turban and asked, "can you also tie that thing around your penis?" Gelband continued to make deeply insulting and crude remarks regarding Mr. Luthra's turban despite all attempts to stop Gelband from making these cruel statements.

17.     Mr. Luthra was humiliated, disgusted, and emotionally distraught as a result of Respondent's actions.

3

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

18.     In or around March 25, 2022, Mr. Luthra reported Gelband to his managers, stating, "I feel as though I have been targeted since discriminatory conduct, unreasonable and biased comments were made to me."

19.     Respondent took no effective action following this complaint. Mr. Luthra made an effort to avoid Gelband for the remainder of his employment.

20.     In or around September of 2022, Mr. Luthra submitted a Medical Certification for Accommodations, citing significant pain in his abdomen. This was the first instance Mr. Luthra notified Respondent of any mental or physical impairment.

21.     In or around July of 2023, Respondent acknowledged Mr. Luthra's exceptional performance and promoted him to a CRC level two (2). The promotion to CRC level two (2) came with nearly a $6,000.00 increase but was still around $9,000.00 less than the CRC level three (3) position.

22.     In or around August 10, 2023, Mr. Luthra reported additional physical impairments relating to his disability. Mr. Luthra communicated his desire to receive an accommodation for his disability to Padron, Aulov, Belidor, and Smith.

23.     During Mr. Luthra's employment, he was subjected to relentless harassment by Sara Haddadi ("Haddadi"), an individual female who was employed by Respondent as a Clinical Research Coordinator. Haddadi trained Mr. Luthra and assigned him tasks.

24.     Mr. Luthra was the only Indian individual in his office and was treated differently by his colleagues. Respondent, by and through their employees, managers, and agents, treated Mr. Luthra less favorably because he was Indian. Respondent ignored Mr. Luthra, assigned him additional tasks that required extensive amounts of overtime hours to complete, failed to pay him overtime wages, and screamed at him when he asked for help.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

25.     On or around August 30, 2023, Mr. Luthra emailed Padron regarding Haddadi's treatment towards him. Mr. Luthra reported that Haddadi's behavior towards him was "manipulative," "aggressive," "inappropriate," and "dominating." Mr. Luthra explained that he "tried to manage the situation on [his] own, but [Haddadi's behavior] has persisted and is now affecting both [his] emotional well-being and [his] physical health… which really triggers [my abdomen pain] bad with repeated episodes."

26.     Yet, Respondent failed to take meaningful action, and Mr. Luthra endured Haddadi's unlawful behavior for months.

27.     In or around October 28, 2023, Mr. Luthra again emailed Padron, stating, "if I [try] to say something then [Haddadi] totally denie[s] it and [puts] me down at every stage which is stressful for me…I am eager to work towards a resolution that will make me less stressful for all involved."

28.     Again, Respondent failed to take meaningful action.

29.     Haddadi screamed at Mr. Luthra relentlessly to the point Mr. Luthra had a panic attack at work. Mr. Luthra sought medical treatment and was diagnosed with anxiety as a result of Haddadi's despicable conduct.

30.     Mr. Luthra's doctor even recommended he take FMLA leave.

31.     In or around December 15,  2023, Mr. Luthra applied for FMLA Leave.

32.     In or around December 18, Respondent extended Mr. Luthra's probationary period of employment. Several days after Mr. Luthra filed for FMLA leave, Respondent extended Mr. Luthra's probationary period of employment, limiting his benefits as an employee of Respondent.

33.     In or around December 29, 2023, Respondent approved Mr. Luthra's FMLA Intermittent Leave from January 1, 2024, to July 1, 2024.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

34.     In or around January 1, 2024, Mr. Luthra's health deteriorated to the point he was hospitalized. Mr. Luthra informed Padron of his health condition.

35.     In or around January 4, 2024, Belidor asked Mr. Luthra to return back to work as scheduled despite his recent health emergency.

36.     Mr. Luthra continued to work and take intermittent leave for several months and was not issued with any write-ups or placed on a performance improvement plan while he was on intermittent medical leave.

37.     In or around February of 2024, Mr. Luthra again went to the emergency room because he experienced chest pains. The following day, Mr. Luthra informed his manager of his daily activities that needed to be assisted while he was recovering from his emergency room visit.

38.     Throughout this time, on or around each of October 12, 2023; February 10, 2024; February 14, 2024; February 20, 2024; and March 7, 2024; Mr. Luthra asked Padron and Aulov for assistance in extending his visa to remain in the United States. Neither Padron nor Aulov provided any meaningful assistance despite Mr. Luthra's desperate attempts to resolve this issue. In fact, Padron and Aulov ignored Mr. Luthra for months and never provided assistance with securing his renewed visa.

39.     In or around March 11, 2024, Padron informed Mr. Luthra that he was being terminated, effective immediately. Respondent cites to Mr. Luthra's probationary period being extended, making him an at will employee. Respondent further cites to Mr. Luthra's poor job performance as the reason for his termination.

40.     Mr. Luthra was shocked that Respondent terminated him because he had not received a work evaluation for months.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

41.     Mr. Luthra contacted Belidor, stating "I was taken aback by the unexpected termination notice, as I was not given any prior indication of performance issues or concerns..."

42.     Mr. Luthra contacted Lopez, stating, "Over the past few months, I have observed several instances of bias within our workplace. These biases have manifested in various forms, including unequal treatment, favoritism, and exclusionary practices… [and include] the recent decision to terminate my employment."

43.     Respondent unlawfully discriminated against Mr. Luthra because of his race and disability and for taking FMLA leave, and unlawfully retaliated against Mr. Luthra because he opposed Respondent's unlawful employment practices.

44.     The events described above are just some of the examples of unlawful discrimination and retaliation that Respondent subjected Mr. Luthra to on a continuous and on-going basis throughout his employment.

45.     Respondent violated Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, the Americans with Disability Act, the FMLA, and the Miami-Dade Code of Ordinances by subjecting Mr. Luthra to a hostile work environment, disparate treatment, and retaliation.

46.     Respondent exhibited a continuous practice of discrimination, and Mr. Luthra therefore makes all claims herein under the continuing violations doctrine.

47.     As a result of the acts and conduct complained herein, Mr. Luthra has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Mr. Luthra has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Mr. Luthra has further experienced severe emotional and physical distress.

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

48.     As a result of Respondent' actions, Mr. Luthra felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

49.     Respondent is liable for violating Mr. Luthra's personal dignity, and depriving Mr. Luthra of his civil right to pursue an equal employment opportunity.

Please contact me if you have any questions or require any additional information. Thank you for your courtesy and cooperation in the matter.

Dated:  Miami, Florida          **DEREK SMITH LAW GROUP, PLLC**
       May 15, 2024          *Counsel for Claimant*

                     */s/ Daniel J. Barroukh*
                     Daniel J. Barroukh, Esq.
                     Derek Smith Law Group, PLLC
                     520 Brickell Key Dr, Suite O-301
                     Miami, FL 33131
                     Tel: (786) 568-8120
                     Danielb@dereksmithlaw.com

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 1746</u>

I, RAVIPAL LUTHRA, declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>05 / 15 / 2024</u>

_____
RAVIPAL LUTHRA

Doc ID: 7dc6ab26158e67964354c7fad429534f65042154



**Dropbox** Sign                                                                    Audit trail

---

| | |
|---|---|
| **Title** | Luthra Final EEOC Charge for Review |
| **File name** | EEOC_Form_5_Luthra.pdf and 1 other |
| **Document ID** | 7dc6ab26158e67964354c7fad429534f65042154 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

---

## Document History

| | | |
|---|---|---|
| **SENT** | **05 / 15 / 2024**<br>15:37:26 UTC | Sent for signature to Ravipal Luthra (ravi291990@gmail.com)<br>from sign@dereksmithlaw.com<br>IP: 136.28.84.43 |
| **VIEWED** | **05 / 15 / 2024**<br>15:39:29 UTC | Viewed by Ravipal Luthra (ravi291990@gmail.com)<br>IP: 69.125.78.37 |
| **SIGNED** | **05 / 15 / 2024**<br>15:40:46 UTC | Signed by Ravipal Luthra (ravi291990@gmail.com)<br>IP: 69.125.78.37 |
| **COMPLETED** | **05 / 15 / 2024**<br>15:40:46 UTC | The document has been completed. |

---