UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RAVIPAL LUTHRA,

       Plaintiff,                                CASE NO.: 1:25-cv-20656-AHS

v.

UNIVERSITY OF MIAMI,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, RAVIPAL LUTHRA ("Plaintiff"), hereby files his Response in Opposition to

Defendant's, UNIVERSITY OF MIAMI ("Defendant"), Motion to Dismiss Amended Complaint

("Defendant's Motion" and/or "Motion"). In support, Plaintiff states as follows:

**INTRODUCTION**

Defendant's Motion seeking dismissal of Plaintiff's Amended Complaint ("Amended

Complaint") is overreaching and must be denied. As set forth herein, Plaintiff's Amended

Complaint contains sufficient factual allegations to put Defendant on adequate notice of the claims

against it and the grounds upon which they rest, under 42 U.S.C. § 1981 ("Section 1981"), Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Family and Medical

Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"), the Florida Civil Rights Act of 1992, § 760.01,

Florida Statutes ("FCRA"), and the Miami-Dade County Human Rights Ordinance, ch. 11A, art.

IV, § 11A, *et seq.* ("MDHRO").

Plaintiff has properly stated claims against Defendant for disparate treatment, hostile work

environment, and retaliation on the basis of his race in violation of Section 1981, race and national

origin in violation of Title VII, the FCRA, and the MDHRO, and further interference and retaliation under the FMLA. Defendant's Motion fails to establish any meaningful pleading deficiencies and asks this Court to make determinations inappropriate at the motion to dismiss stage. For this and other reasons, Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion in its entirety.

## STANDARD OF LAW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Arista Records. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" *Chepak v. Metro. Hosp.*, No. 13 Civ. 1726, 2014 WL 552682, at *1 (2d Cir. Feb. 13, 2014) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, the Court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[s]" in the plaintiff's favor, and use its "judicial experience and common sense" to conduct a "context-specific" analysis of the complaint. *Iqbal*, 556 U.S. at 678–79. Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, *Arista Records*, 604 F.3d at 119–21, but only facts sufficient to give the defendant "fair notice of what

the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, No. 14-2265-CV, 2015 WL 5127519, at *11 (2d Cir. Sept. 2, 2015). In determining whether the complaint states a plausible discrimination case, a "court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 11. "A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935 at 937 (11th Cir. 2011).

## LEGAL ARGUMENT

### I.     Plaintiff's Amended Complaint is Not an Impermissible Shotgun Pleading

Defendant's first basis for dismissal is that Plaintiff's Amended Complaint is a "shotgun pleading" because Plaintiff "repeats, reiterates and realleges each and every allegation made in the above paragraphs." *See D.E. #11*, p. 7. The Amended Complaint is not a shotgun pleading by any means. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Rule 10(b) further provides: A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. FED. R. CIV. P. 10. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a

separate count or defense. See *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Eleventh Circuit undertook in *Weiland v. Palm Beach Cty. Sheriff's Office* to both examine the history of what is often disparagingly referred to as "shotgun pleadings" and "impose some clarity on what [the Eleventh Circuit has] said and done about unclear complaints." *Id*. To accomplish this, the Weiland Court examined more than sixty published decisions issued since 1985 regarding the various types of shotgun pleadings that have been criticized by the Eleventh Circuit for nearly 30 years. *Id*. The Eleventh Circuit identified four "rough types or categories" of shotgun pleadings. *Id*. The first published opinion to discuss a shotgun pleading, albeit in a dissenting footnote, described the problem with shotgun pleadings under the federal rules as being "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden...". *Id*. (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n. 14 (11th Cir. 1985). Judge Tjoflat's dissenting footnote in T.D.S. found that the paradigm of a shotgun pleading is one "containing a variety of contract and tort claims interwoven in a haphazard fashion." *Id*.

> "The most common type [of shotgun pleading] is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or

another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." (Emphasis added).

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Although Defendant argues that Plaintiff's Amended Complaint constitutes a shotgun pleading, its reasoning does not align with any of the four (4) types of shotgun pleadings identified by the Eleventh Circuit. Instead, Defendant's Motion appears to quarrel with that of the "most common type" of shotgun pleading (i.e. where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint). *See* D.E. 17 at pp. 10 – 12.

It is notable that no Count of the Amended Complaint incorporates the entirety of the preceding Count. Further, each Count does conspicuously reference the antecedent salient facts that are both inextricably bound to Plaintiff's cause of action and necessitated by statute for each violation thereof. *Weiland* at 1321–23. Regardless, the alleged Section 1981, Title VII, FMLA, FCRA, and MDHRO violations as outlined in the Amended Complaint delineate what is needed for each Count's viability, and thus appears to remove any cause for confusion. The facts that were incorporated into each count are facts that are relevant to that count.

Furthermore, Defendant moves to dismiss the Amended Complaint as an impermissible shotgun pleading, but dismissal of the Amended Complaint for such deficiencies is procedurally incorrect. D.E. 17 at p. 12. The proper vehicle to clarify an alleged shotgun pleading is a motion for a more definite statement under Rule 12(e), not a motion to dismiss. See *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D. 629, 630 (M.D. Fla. 2005).

Therefore, Defendant's claim that the Amended Complaint is a "shotgun pleading" fails as a matter of fact.

II.     **Plaintiff Has Established a *Prima Facie* Case of Discrimination in Violation of Section 1981, Title VII, the FCRA and the MDHRO.**

Plaintiff's Amended Complaint properly establishes claims against Defendant for disparate treatment under Section 1981, Title VII, the FCRA and the MDHRO. Specifically, Plaintiff asserted claims against Defendant for race and national origin discrimination under Section 1981, Title VII, the FCRA, and the MDHRO. Plaintiff's claims satisfy the pleading requirements necessary to survive a motion to dismiss and include sufficient facts to put Defendant on notice of the claims asserted against it.

As the Eleventh Circuit has made clear, plaintiffs in employment discrimination cases are not required to satisfy the elements of the *McDonnell-Douglas* framework to survive a motion to dismiss. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270–71 (11th Cir. 2004); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (finding pleadings sufficient when they give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest). This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement. *See Swierkiewicz*, 534 U.S. at 510. Plaintiffs in employment discrimination claims need only provide enough factual matter, that when taken as true, suggest intentional discrimination. *See Surtain v. Hamlin Terrance Found.*, 789 F3d 1239, 1246 (11th Cir. 2015).

Plaintiff has nonetheless satisfied the elements of the *McDonnell-Douglas* framework, which include: (1) Plaintiff is a member of a protected class; (2) Plaintiff was subjected to an adverse employment action; (3) Plaintiff's employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) Plaintiff was qualified to do the job. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Defendant's Motion solely raises an issue with Plaintiff's ability to satisfy the third prong of the *McDonnell-Douglas* framework, and it is therefore undisputed that Plaintiff has satisfied his burden as to the first, second, and fourth prongs. *See* D.E. 17 at pp. 15 – 16. Defendant's position that "Plaintiff must identify a specific comparator" in order to have a viable claim for discrimination is incorrect, as the Eleventh Circuit has established that "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

"'Even without similarly situated comparators,' a plaintiff can establish a valid claim if she can present a convincing mosaic of circumstantial evidence from which a factfinder can infer discriminatory motivation." *Smith v. A-One Home Care, Inc.*, 2023 U.S. Dist. LEXIS 148354 at *16-17 (N.D. Ga. 2023) (citing *Lewis*, 934 F.3d at 1185) (denying defendant's motion to dismiss plaintiff's claim of discrimination under Section 1981 and Title VII for, in part, failing to name a specific comparator). The *Lewis* Court explained that discriminatory motive can "be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent may be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011)).

Here, if taken as true, the facts set forth in Plaintiff's Amended Complaint undoubtedly establish an inference of discriminatory motivation, warranting denial of Defendant's Motion as to the Plaintiff's discrimination claims.

III. **Plaintiff Has Established a *Prima Facie* Case of Hostile Work Environment in Violation of Section 1981, Title VII, the FCRA and the MDHRO.**

Plaintiff's Amended Complaint contains a wide array of sufficient factual allegations to put Defendant on notice of Plaintiff's hostile work environment claims and the grounds upon which they rest. To establish a *prime facie* case of hostile work environment, the Plaintiff must show (1) that Plaintiff belonged to a protected group; (2) Plaintiff was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In analyzing whether the conduct was objectively hostile, courts analyze several factors, including (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. *Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339–1140 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Plaintiff has established each of the above-mentioned elements under Section 1981, Title VII, the FCRA, and the MDHRO. Plaintiff is a member of a protected class as an Indian individual of Indian descent. *See* Am. Compl., ¶ 102. Defendant subjected Plaintiff to humiliating and isolating conduct on account of his race and national origin, including: subjecting Mr. Luthra to the regular use of vulgar remarks about his turban, such as, "can you also tie that thing around your penis," and falsely telling Mr. Luthra that patients felt uncomfortable because of his turban; 2) screaming at Mr. Luthra in front of his coworkers, even to the point he suffered a panic attack, 3) ignoring Mr. Luthra for hours while disregarding his questions or pleas for help, 4) expecting Mr.

8

Luthra to train himself in lieu of proper training, 5) assigning Mr. Luthra nearly double the tasks assigned to his non-Indian coworkers, and 6) excluding Mr. Luthra from team-wide meetings. *See* Am. Compl., ¶¶ 104, 155, 227, 265.

In *Faragher v. City of Boca Raton*, the Supreme Court concluded that an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). In this case, Plaintiff was harassed by a supervisor who was a direct supervisor, thus satisfying Defendant's vicarious liability for the conduct.

Defendant contends that Plaintiff's allegations are insufficient to state a claim for hostile work environment because, "other than conclusory allegations, the Amended Complaint identifies a single instance of purported harassment related to his race: the comment about his turban." Def. Mot., p. 16. This argument again falls short as Defendant continues to ignore the specific dates, locations, witnesses, and statements that Plaintiff alleges in his Amended Complaint regarding Defendant's harassing conduct. Am. Compl., ¶¶ 30—36, 41—44, and 60—63.

Defendant further fails to acknowledge the severity of its supervisors and employees actions, the grotesque sexual nature of the comments to Plaintiff, and the constant verbal abuse and mistreatment of Plaintiff that resulted in Plaintiff suffering a panic attack. Accordingly, Defendant's Motion to Dismiss the Plaintiff's hostile work environment claims must also be denied.

IV.    **Plaintiff Has Established a *Prima Facie* Case of Retaliation in Violation of Section 1981, Title VII, the FCRA and the MDHRO.**

The FCRA's retaliation provision is virtually identical to Title VII's retaliation framework. *See Suncoast Architecture & Eng'g, LLC v. Tuzlak*, 2015 Fla. Cir. LEXIS 10761 at *9 (Fla. Cir. 2015). Similarly, "claims of employment discrimination under § 1981 may be based on disparate

treatment, hostile work environment, or retaliation and are subject to the same standards of proof and analytical framework as claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e." *Melton v. I-10 Truck Ctr., Inc.*, 2023 U.S. Dist. LEXIS 232098 at *21-22 (N.D. Fla. 2023). In order to establish a claim for retaliation under Title VII, the Plaintiff must show (1) he participated in a statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal connection between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citations omitted).

Here, Plaintiff has established each element of his retaliation claims. First, Plaintiff participated in a statutorily protected expression by reporting and opposing race and national origin discrimination and an unlawfully hostile work environment. Second, Plaintiff suffered materially adverse actions as discussed above, including but not limited to the imposition of unfavorable work assignments and unlawful termination. Last, there is a causal link connecting Plaintiff's protected activity to his termination. Defendant's Motion solely raises an issue with the first prong of this analysis and does not dispute whether Plaintiff has sufficiently established the second or third prong. *See* Def. Mot. at pp. 17-19.

### A. Protected Activity

It is well established that "[a] complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Hamilton v. Sheridan Healthcorp Inc.*, 602 F. Appx. 485, 489 (11th Cir. 2015).

In this case, Plaintiff successfully alleged that he repeatedly engaged in protected activity by complaining about race and national origin discrimination and a hostile work environment directly to his supervisors and Human Resources personnel. *See* Am. Compl., ¶¶ 34—36, 41, 43-

44, 48, 60-61. Defendant asserts that "the only potentially-actionable and administratively-exhausted 'protected activity' identified in the Amended Complaint is Plaintiff's complaint in March 22…", which is simply untrue. *See* Def. Mot. at p. 19. Defendant fails to recognize any additional allegations of protected activity contained in Plaintiff's Amended Complaint, including the following: "Mr. Luthra not only complained about Haddadi's discriminatory and harassing conduct, but he further explains that his disability, including abdominal pain and anxiety, flares up as a result of Haddadi's conduct." Am. Compl., ¶ 44; and "[i]n or around February and March of 2024, Mr. Luthra's complaints of Haddadi's harassing and discriminatory conduct persisted. During this time, Mr. Luthra complained about Haddadi's inappropriate comments related to his turban and overall treatment of him… to his supervisors and Defendant's HR team…" *Id*. at ¶¶ 60-61.

Plaintiff repeatedly alleges that he engaged in protected activity where he reported unlawful discrimination and harassment to his supervisors and Defendant's HR team. As such, Plaintiff has sufficiently pled the first prong of this analysis. Defendant does not contest whether Plaintiff successfully alleges the second and third prong of the retaliation analysis, and therefore there is no dispute as to whether those prongs were successfully brought forth. As a result, Defendant's Motion must be denied as to Plaintiff's retaliation claims.

V.    **Plaintiff Has Established a *Prima Facie* Case of Interference and Retaliation in Violation of the FMLA**

A.  **FMLA Interference**

The FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Mancini v. Sch. Bd.*, 2025 U.S. Dist. LEXIS 78148 at 16-17 (S.D. 2025) (citing 29 U.S.C. § 2615(a)(1)). The benefits afforded by the FMLA include (1) the right to "12 workweeks of leave

11

during any 12-month period" for certain family events or serious health conditions, 29 U.S.C. § 2612(a)(1), and (2) the right to "be restored by the employer to the position of employment held by the employee when the leave commenced." *Id* at 17 (citing 29 U.S.C. § 2614(a)(1)); see also *Spakes v. Broward Cnty. Sheriff's Off.*, 631 F.3d 1307, 1309 n.1 (11th Cir. 2011) ("The FMLA entitles eligible employees to twelve weeks of leave during any twelve-month period because of a serious health condition . . . as well as the right to be reinstated to the position that they held when the leave began or to an equivalent position[.]").

To establish an interference claim, "an employee must demonstrate that [s]he was denied a benefit to which [s]he was entitled under the FMLA." *Id*. (citing *Martin v. Brevard Cnty. Pub. Schs.*, 543 F. 3d 1261, 1266-67 (11th Cir. 2008)). For an interference claim, "[a]n employee need not 'allege that [her] employer intended to deny the right; the employer's motives are irrelevant.'" *Id*. (quoting *Strickland v. Water Works & Sewer Bd.*, 239 F. 3d 1199 at 1208 (11th Cir. 2001)). The FMLA also mandates that if an employee takes leave under the Act, he must be restored to the position he held before taking leave or to a position with "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a).

The Eleventh Circuit has held that an employee cannot state an interference claim when he was given all the leave he was due, when he was restored to his prior position, and when he was terminated after his return. *Id*. at 18 (citing *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999)). In this case, Defendant did not give Plaintiff all of his FMLA leave that he was due under his request, failed to restore Plaintiff to a full-time employee for Defendant, and terminated Plaintiff during his approved intermittent FMLA leave. Each of these actions alone is sufficient to be deemed an interference with Plaintiff's FMLA rights.

"To prevail on her FMLA interference claim, [Plaintiff] must show harm from the alleged interference with her rights." *Id*. (citing *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274-5 (11th Cir. 2020)). As pleaded, Plaintiff has alleged sufficient harm, both financial and emotional, as a result of Defendant's failure to give Plaintiff the total amount of leave he was approved for. As such Plaintiff has successfully established a claim for Defendant's interference with his FMLA rights, and the Court should deny Defendant's Motion as to this count.

## B. FMLA Retaliation

To prevail on a retaliation claim under the FMLA, "an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Mancini*, 2025 U.S Dist. LEXIS 78148 at 26-27 (citing *Strickland*, 239 F.3d at 1207). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that [her] employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Id*. (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)).

Here, Plaintiff has put forth a detailed set of facts that emphasis that Defendant's actions were motivated by impermissible retaliatory or discriminatory animus. Plaintiff first asserted that he was qualified and approved for FMLA leave. *See* Am. Compl., ¶¶ 188-89. Plaintiff then explains how Defendant began excluding Plaintiff from team-wide meetings and ultimately terminated Plaintiff shortly after exercising his right to FMLA leave. *Id*. at ¶189. Importantly, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Mancini*, 2025 U.S. Dist. LEXIS 78148 at 29 (citing *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (quoting Hurlbert v. St. Mary's

Health Care Sys, Inc., 439 F.3d 1286 at 1298 (11th Cir. 2006)); see also *Strickland*, 239 F.3d at 1207 ("Proximity in time is sufficient to raise an inference of causation." (quoting *Brungart v. BellSouth Telecomms.*, Inc., 231 F.3d 791, 799 (11th Cir. 2000))).

The temporal proximity alone between Plaintiff's use of FMLA leave and his termination should give rise to an inference of causal connection between the two. Defendant's retaliation against Plaintiff started within days after he commenced his FMLA leave. Plaintiff alleges that Defendant approved his FMLA leave request on December 29, 2023, and "[i]n or around January 4, 2024, Belidor asked Mr. Luthra to return back to work as scheduled despite his recent health emergency or FMLA status." *See* Am. Compl., ¶¶ 52-54. In addition, Plaintiff alleges that after he exercised his FMLA rights, Defendant assigned Plaintiff more work, subjected Plaintiff to harsher scrutiny, required Plaintiff to work alongside his harassers, ignored Plaintiff at times, demoted Plaintiff, and terminated Plaintiff. *See* Am. Compl., ¶ 204.

The Court in *Mancini* explains that "temporal proximity is unquestionably 'very close' given Mancini's termination occurred eleven (11) days after her return from leave. Thus, because lack of knowledge of Mancini's protected activity is not at issue here, the 'very close' temporal proximity is sufficient to make causal connection a jury issue." *Mancini*, 2025 U.S. Dist. LEXIS 78148 at 29. In this case, there is an even closer temporal proximity between the protected activity and the adverse action, only six (6) days. As a result, the Court should deny Defendant's Motion as to the FMLA retaliation county.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint, in its entirety. Alternatively,

should the Court find in favor of the Defendant on any of the aforementioned issues, the Plaintiff

respectfully requests that this Court grant leave to amend the Complaint and cure any deficiencies.

Dated:  Miami, Florida                                  **DEREK SMITH LAW GROUP, PLLC**
         July 10, 2025,                                  *Counsel for Plaintiff*

                                           */s/ Daniel J. Barroukh*
                                           Daniel J. Barroukh, Esq.
                                           Florida Bar No.: 1049271
                                           520 Brickell Key Drive, Suite O-301
                                           Miami, FL 33131
                                           Tel: (305) 946-1884
                                           Fax: (305) 503-6741
                                           Danielb@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on this 10th day of July, 2025, on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**ISICOFF RAGATZ**
*Counsel for Defendant*
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

Eric D. Isicoff
Florida Bar No.: 372201
Isicoff@irlaw.com

Teresa Ragatz
Florida Bar No.: 545170
Ragatz@irlaw.com

Christopher M. Yannuzzi
Florida Bar No.: 92166
Yannuzzi@irlaw.com