UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20656-CIV-SINGHAL

RAVIPAL LUTHRA,

    Plaintiffs,

vs.

UNIVERSITY OF MIAMI,

    Defendant.
_____/

## ORDER

Plaintiff Ravipal Luthra sued his former employer, the University of Miami, alleging that it discriminated against him on the basis of race, color, and national origin, created a hostile work environment, retaliated against him when he reported the discrimination, interfered with his attempt to take leave under the Family Medical Leave Act ("FMLA"), and retaliated against him for requesting that leave. (Complaint (DE [1])). Defendant moved to dismiss for failure to state a claim, (DE [17]), and the Court grants in part and denies in part Defendant's motion. The Court dismisses Plaintiff's discrimination, hostile work environment, and FMLA interference claims but allows the retaliation claims to continue.

    I.    BACKGROUND

Luthra is a Sikh Indian male who was employed as a Clinical Research Coordinator at the University of Miami. (DE [15] ¶¶ 1, 27). Originally hired as a Clinical Research Coordinator III, Luthra was demoted to a Clinical Research Coordinator I in August of 2021. *Id.* ¶ 28. On March 21, 2022, a non-Indian co-worker, Todd Gelband, insulted Luthra about his turban, asking Luthra if he could tie it around his genitals. *Id.* ¶ 30. The

next day, Luthra reported Gelband's racist remark to his managers. *Id.* ¶ 34. Contrary to the allegations in Plaintiff's Amended Complaint, the University of Miami investigated the matter and formally reprimanded Gelband. (Memo Final Written Warning (DE [17-2]).[1]

In July 2023, Luthra was promoted to Clinical Research Coordinator II. (DE ¶ 37). A month later, Luthra complained via email to his manager that his *de facto* supervisor, Sara Haddadi, was ignoring him, and when not ignoring him she was screaming at him, assigning him large projects requiring extensive overtime, and failing to track his overtime. *Id.* ¶ 40. In his email, Luthra described Haddadi's behavior as "manipulative," "aggressive," "inappropriate," and "dominating." *Id.* ¶ 41. Luthra's manager did nothing. *Id.* ¶ 42. Luthra emailed his manager again about the difficulties of working under Haddadi, but his manager did not respond. *Id.* ¶¶ 43-45.

Around this time, Haddadi told Luthra that his turban made a patient uncomfortable. *Id.* ¶ 46. Luthra reported Haddadi's comment to his manager, but again, his manager did not respond. *Id.* ¶ 48. Luthra suffered a panic attack at work, and after seeking medical treatment, he was diagnosed with anxiety resulting from Haddadi's conduct. *Id.* ¶ 49.

On December 15, 2023,[2] at his doctor's recommendation, Luthra applied for leave under the FMLA. *Id.* ¶ 51. Also on December 15, 2023, the University of Miami extended Luthra's probationary period, citing eleven areas where it wanted to see Luthra grow. *Id.*;

---

[1] Although generally limited to the four corners of the complaint when deciding a motion to dismiss, *see Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009), courts may consider the defendant's exhibits under the incorporation-by-reference doctrine "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). This memo is central to Plaintiff's claim that the University of Miami discriminated against him and created a hostile workplace, and it is undisputed.

[2] Plaintiff initially requested leave on December 4, 2023, and on December 11, 2023, Defendant informed him that while eligible for FMLA leave, he needed to provide more documentation before his request would be approved. (Notice of Eligibility (DE [17-7])) (incorporated by reference, *see Johnson*, 107 F.4th at 1300).

(Memo Extension of Probationary Period (DE 17-6])).³ On December 29, 2023, the University of Miami approved his FMLA leave from January 1, 2024 to July 1, 2024. (DE [1] ¶ 52). Starting January 1, 2024, Luthra began *intermittently* taking his leave. On January 4, 2024, one of the Human Resource Managers requested that Luthra come back to work. *Id.* ¶ 54. Luthra returned to work at times while taking his leave intermittently. *Id.* ¶¶ 54-55. After Luthra made his FMLA leave request, the University of Miami began holding office meetings for Luthra's entire team but excluding Luthra. *Id.* ¶ 57. Luthra was the only member of his team not included in these meetings. *Id.* But no one made any other complaints about Luthra's work while he was taking his leave, nor did anyone complain about his intermittent attendance at work. *Id.*

During this time, Luthra continued to make complaints about Haddadi's behavior, including re-alleging her comment about the patient's concern with his turban. *Id.* ¶ 60. He requested an accommodation and help extending his work visa. *Id.* ¶¶ 62-64. The University of Miami ignored his requests for visa assistance and denied his accommodation request. *Id.* On the day that it denied his accommodation request, the University of Miami terminated Luthra. *Id.* ¶ 64.

Luthra filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR"). *Id.* ¶ 14. The EEOC and FCHR issued him right to sue letters. *Id.* ¶ 14.

Luthra has now sued the University of Miami, raising discrimination, hostile workplace, and retaliation claims under 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Florida Civil Rights

---

³ Incorporated by reference. *See Johnson*, 107 F.4th at 1300.

3

Act of 1992, § 760.01 *et seq.*, Florida Statutes ("FCRA"), and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A, *et seq.* ("MDHRO"). He has also brought interference and retaliation claims under the FMLA, 29 U.S.C. § 2612 *et seq.*

II. <u>LEGAL STANDARDS</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the cause of action will not do." *Id.* To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

4

Courts may consider evidence outside of the complaint if the evidence is incorporated by reference into the complaint. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The evidence must be "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.*

### III. DISCUSSION

Because Plaintiff relies on similar facts for each type of claim, the Court will consider the discrimination claims together, the hostile work environment claims together, and the retaliation claims together. Then the Court will consider the FMLA claims. The Title VII, Section 1983, FCRA, and MDHRO claims are analyzed under the standard for Title VII claims. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1318 n.11 (S.D. Fla. 2025) (employment discrimination, hostile work environment, and retaliation claims brought under FCRA and MDHRO are analyzed under the same standard as Title VII claims).

#### A. Shotgun Pleading

Defendant's first argument is that the Complaint is a shotgun pleading. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these [Rule 8(a)(2) and Rule 10(b)] pleading requirements." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that do not re-allege all preceding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4)

those that assert multiple claims against multiple defendants without specifying which applies to which. *See Weiland*, 792 F.3d at 1321–23 (quotations omitted).

Defendant argues that because each count adopts all the general allegations, the Complaint falls into the first *Weiland* bucket. Not so. *Weiland* prohibits the incorporation of all proceeding counts into each count, such that each successive claim becomes a bigger and bigger snowball, difficult to decipher. The prohibition is against incorporation of not only the facts, but also the allegations of preceding counts. Here, each count of the Complaint merely incorporates all the factual allegations. That is common practice. Each count of the Complaint also specifically lays out the facts being relied on to support that claim. *See, e.g.*, (DE [1] ¶ 133).

Defendant also avers that because two paragraphs in the general allegations assert that Defendant violated Section 1981, Title VII, the FMLA, the FCRA and the MDHRO, and those two paragraphs are incorporated into each count, each count actually raises claims under all the above statutes, amounting to a shotgun pleading. This is a non sequitur. Those two paragraphs are summaries, not actual allegations. No one should be confused by those two summary paragraphs and believe that in each count Plaintiff was actually raising claims under all five statutes.

But several of the counts do run afoul of the third *Weiland* bucket and allege multiple claims in a single count. Count I alleges both race and national origin discrimination under Section 1981. (DE [1] at 11). Count IV alleges both race and color discrimination under Title VII. *Id.* at 18. Count IX alleges both race and national origin discrimination under FCRA. *Id.* at 27. And Count XII alleges both race and national origin discrimination under MDHRO. "[E]ach theory of liability" on which the discrimination claim is based constitutes a separate cause of action—and therefore must be pled in a separate

count." *Amaya v. Vilsack*, No. 2024 WL 1285162, at *2 (S.D. Fla. Mar. 26, 2024) (citation modified).

Even though the Complaint qualifies as a shotgun pleading, for the sake of economizing judicial resources and reducing the number of amendments needed, the Court will address the merits of the Complaint.

B. <u>Discrimination Claims (Counts I, IV, IX, XII)</u>[4]

"To state a race-discrimination claim under Title VII, a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citation modified); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004). Plaintiff here fails to make such allegations. Although Plaintiff makes numerous allegations that he suffered adverse employment actions, he fails to allege sufficient facts that "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination." *Surtain*, 789 F.3d at 1246.

Despite conclusory allegations of "regular" and "continued" racial discrimination, Plaintiff only points to two incidents involving any sort of interaction about race. First, he alleges that in 2022 his coworker Gelband taunted him about his turban and asked him if he wrapped it around his genitals. But after Plaintiff reported this, Defendant investigated the incident and reprimanded Gelband. (DE [17-2]). And after this incident, in July of 2023, Defendant promoted Plaintiff. Plaintiff does not allege facts connecting Gelband's one-time comment, which Defendant rebuked, with adverse employment actions. In fact, the

---

[4] Even though these counts include claims for discrimination on the basis of race, color, and national origin, these counts will be construed as claims of race discrimination for the purposes of this analysis. As discussed above, these counts violate the rules against shotgun pleadings but are construed as only alleging one claim per count.

7

opposite happened, because Defendant promoted Plaintiff shortly afterwards. This incident cannot support a claim.

The second incident likewise fails to support a claim.[5] In the fall of 2023, Plaintiff's supervisor, Haddadi, informed him that a patient was concerned with Plaintiff's treatment because of his turban. Plaintiff points out that Haddadi had been ignoring Luthra at times, screaming at him at others, and making him work significant amounts of overtime without properly tracking his overtime hours. But Plaintiff is asking the Court to make several logical leaps to connect Haddadi's statement with her treatment of Plaintiff. Haddadi informed Plaintiff of a patient's comments. Plaintiff does not provide any other facts indicating that the supervisor herself harbored racial animus against him. And other than reporting this one incident, in none of Plaintiff's other numerous emails about Haddadi's conduct does he claim that any of her conduct is motivated by racial animus. This one-time statement regarding the patient's comment is not clearly motivated by racial animus and is insufficient to support a claim of racial discrimination. *See Banks v. Cypress Chase Condo. Ass'n B, Inc.*, 616 F. Supp. 3d 1316, 1321 (S.D. Fla. 2022) (supervisor's use of the phrase "you people" in reference to plaintiff was insufficient to support claim for racial discrimination); *Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (supervisor's comment that "she would not fight to get plaintiff promoted just because plaintiff was the highest ranking black female" failed to indicate intentional discrimination). Even in the context of Haddadi's behavior towards

---

[5] Defendant asserts that Plaintiff may not raise this fact since Plaintiff did not raise it in his charge before the EEOC. "[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Considering that this second allegation, like the first, involved a comment made by a coworker about Plaintiff's turban, the facts supporting it likely would have been discovered in an EEOC investigation of the first allegation. This second allegation rises out of the charges related to the first allegation and is within the proper scope of this lawsuit.

him, this incident fails to indicate that her conduct was motivated by racial animus. Plaintiff's race discrimination claims are dismissed.

### C. Hostile Work Environment Claims (Counts II, V, X, XIII)

Plaintiff's hostile work environment claims likewise fail. To state a claim, Plaintiff must state facts indicating the following:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Plaintiff fails to show that any harassment was based on a protected characteristic and was sufficiently severe as to alter the conditions of his employment. Plaintiff has pointed to two isolated events. The first incident was remedied by Defendant and afterwards, Defendant rewarded Plaintiff.

The other incident, Haddadi's comment about the patient's concerns, also fails to support a claim for hostile work environment. First, even taking the comment as inappropriate, it is not clear that the statement alone rises to the level of harassment based on race. As discussed above, this statement by itself does not indicate racial animus.

But even if Haddadi's statement did amount to harassment on the basis of race, it still was not pervasive enough to amount to a hostile work environment. The "mere utterance of an epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not

9

severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

Although Plaintiff points to Haddadi's other misconduct towards him—ignoring him, screaming at him, failing to track his overtime hours, etc.—Plaintiff does not connect that behavior to his race. Plaintiff must show that the misconduct actually was motivated by Plaintiff's race. *See Troupe v. DeJoy*, 861 F. App'x 291, 295 (11th Cir. 2021) ("While Smith's comment that Troupe had 'a very even skin tone' may have been inappropriate, Troupe has not alleged that the comment itself was disparaging or abusive, and she has failed to show any connection whatsoever between her race or color and any of the other behavior that she alleges was hostile or abusive."). Similarly, Plaintiff does not connect his firing, or any other adverse employment action Defendant took, to his race. His allegations of Haddadi's one-time comment about his turban is insufficient to show that the other adverse actions Haddadi, and eventually Defendant, took against him amounted to pervasive harassment based on his race. This claim also is dismissed.

D. <u>Retaliation Claims Under Section 1981, Title VII, FCRA, and MDHRO (Counts III, VI, XI, XIV)</u>

To state a claim for retaliation under these laws, the Plaintiff must show "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). "An action is materially adverse if it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)).

The Court analyzes each factor, starting with protected activity. Plaintiff's March 2022 email, fall 2023 email, and spring 2024 email complaining of Gelband's and

10

Haddadi's racial comments constitute protected activity. To amount to protected activity, a complaint of discrimination must be based on both a subjective and objectively reasonable belief that the employer engaged in unlawful employment practices. *Saffold v. Special Counsel, Inc.*, 147 Fed. Appx. 949, 951 (11th Cir. 2005). Plaintiff meets that standard. Based on Gelband's and Haddadi's comments, he had reason to believe his employer was discriminating against him on the basis of his race. Although, as discussed above, Haddadi's comment did not rise to the level of race discrimination, Plaintiff was reasonable in believing that it did and reporting the comment.

Turning to adverse action, of the two reported incidents of race discrimination, Plaintiff did not suffer adverse action after reporting on Gelband's turban comment. Defendant reprimanded Gelband and later promoted Plaintiff.

Plaintiff does state facts indicating that he suffered an adverse employment action causally connected to reporting Haddadi's statement. Plaintiff alleges that Haddadi made this statement around October 23, 2023, and he reported the statement to his manager. He alleges that he reported this incident again in February or March 2024, shortly before Defendant terminated him. (DE [1] ¶ 60).

Plaintiff claims that Defendant retaliated against him by requiring him to continue reporting to Haddadi after she made a racially charged comment to him, assigning him additional tasks, denying him training, extending his probationary period, and unlawfully terminating him. The first three of these alleged adverse actions are not materially adverse such that they would dissuade a reasonable worker from reporting discrimination. Although unwanted and not ideal, these are not the types of actions that would discourage an employee from making discrimination charges. The last two adverse actions, however—extension of the probationary period and termination—are materially adverse.

Plaintiff also alleges facts showing a causal connection between the protected activity—his reports of alleged racial discrimination—and the extension of his probation and termination. "Causation may be inferred by close temporal proximity between the protected conduct and the materially adverse action taken by the employer." *Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 628 (11th Cir. 2013). Although "mere temporal proximity, without more, must be very close to suggest causation," *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018) (citation modified), courts are hesitant to dismiss a claim on lack of temporal closeness alone. *See Usai*, 801 F. Supp. 3d at 1326-27. Alleging temporal causation is enough, and discovery may reveal more evidence of causation. *See id.* (collecting cases).

Here, Plaintiff alleges that he reported Haddadi's statement sometime around October 23, 2023. Defendant extended Plaintiff's probationary period on December 15, 2023. Plaintiff renewed his complaint about his supervisor's statement in February or March of 2024. (DE [1] ¶ 60). And Defendant fired Plaintiff on March 11, 2024.

Although these facts do not provide strong evidence of causation, Defendant took adverse action shortly after both times that Plaintiff reported Haddadi's statement. These alleged facts justify continued discovery, and this claim survives Defendant's motion to dismiss. *See Usai*, 801 F. Supp. 3d at 1326-27.

E. <u>FMLA Intervention and Retaliation Claims (Counts VII, VIII)</u>

The FMLA prohibits an employer from intervening and restricting an employee from using FMLA leave, as well as retaliating against an employee when he does use his leave. Plaintiff claims that Defendant both interfered in his use of FMLA leave and retaliated against him when he used it.

Starting with interference, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA leave. 29 U.S.C. § 2615(a)(1). To state a claim for interference, an employee must allege that he "was entitled to a benefit under the FMLA that was denied." *Norman v. H. Lee Moffitt Cancer Ctr. & Rsch. Inst., Inc.*, 2023 WL 2146593, at *2 (11th Cir. Feb. 22, 2023). Here, Plaintiff does not allege that his FMLA benefit was denied. In fact, he was allowed to take all the intermittent FMLA leave that he requested. (DE [1] ¶ 52); (DE [17-7]). Plaintiff fails to state a claim for interference.

But Plaintiff does state a claim for retaliation under the FMLA. "In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). On December 4, 2023, Plaintiff initiated his request for FMLA leave. (DE [17-7]). On December 15, he finalized his request. (DE [1] ¶ 51). Also on December 15, 2023, Defendant extended his probationary period, citing poor employment performance in several areas. *Id.* Defendant approved Plaintiff's leave request on December 29, and on January 1, 2024, Plaintiff began taking his FMLA leave intermittently. *Id.* ¶¶ 52-53. After he requested leave, when Plaintiff did work, he was excluded from team meetings that involved every other member of his team. *Id.* ¶ 57. Due to his health issues, Plaintiff requested an accommodation,[6] which was denied. *Id.* ¶ 64. Defendants also ignored Plaintiff's request for assistance with renewing his visa. *Id.* ¶ 62-64. And despite not receiving any write-ups or being placed on any

---

[6] Plaintiff neither brings an ADA claim, nor explains in the Amended Complaint what he means by "accommodation" particularly given that he had already been granted the ability to come to work intermittently.

performance improvement plans while he was taking intermittent leave, Plaintiff was fired on March 11, 2024.

Immediately following Plaintiff's request for FMLA leave, Defendant took adverse employment actions against him. These included extending his probation, excluding him from meetings, denying him accommodation, ignoring other requests, and ultimately firing him. These actions, especially taken together, amount to adverse employment decisions. And Defendant took all of these actions within three months of when Plaintiff requested his leave. At this stage of the case, this significant and swift shift in Defendant's treatment of Plaintiff right after his request, suggest Defendant's actions were causally connected to his leave request. Plaintiff has pled enough facts to state a claim of FMLA retaliation.[7]

### IV. CONCLUSION

Plaintiff's complaint adequately pleads claims for retaliation, but the other counts fail to state a claim. Additionally, the discrimination claims violate the rules on shotgun pleadings. For these reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's [17] Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.
2. Counts I, II, IV, V, VII, IX, X, and XII are **DISMISSED WITHOUT PREJUDICE.**
3. Plaintiff may file a Second Amended Complaint by March 23, 2026.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 2nd day of March 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel of record via CM/ECF

---

[7] To ultimately prevail on this claim, Plaintiff will have to show that the decisionmakers who took the adverse actions against him were aware that he requested FMLA leave.